IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS, S.A., | ) |
| | ) |
| Plaintiff, | ) No. 13-cv-4346 |
| v. | ) |
| | ) Hon. John W. Darrah |
| HOSPIRA WORLDWIDE, INC. and HOSPIRA, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR LEAVE TO AMEND THEIR PENDING MOTION TO DISMISS**

Defendants Hospira Worldwide, Inc. and Hospira, Inc. (collectively "defendants"), by their attorneys, Tabet DiVito & Rothstein LLC, and pursuant to this Court's order dated August 21, 2013, respectfully submit this reply brief in further support of their motion for leave to amend their pending motion to dismiss. Because GlaxoSmithKline Biologicals, S.A. ("GSK") fails to provide any legal basis to deny defendants their requested relief, the Court should grant defendants' motion. Moreover, and perhaps in any event, even if the motion is technically prohibited by Rule 12(g) (which it is not), the Court should nevertheless exercise its discretion at this early stage of the proceedings, before the pending motion to dismiss has even been ruled upon, and grant defendants leave to amend.

## ARGUMENT

**I.  THE COURT SHOULD GRANT DEFENDANTS' MOTION FOR LEAVE TO AMEND BECAUSE IT IS NOT PROHIBITED BY RULE 12(G).**

The Court should grant defendants leave to amend because, as the Seventh Circuit's holding in *Ennenga v. Starns* makes clear, Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion to dismiss. 677 F.3d 766, 773 (7th Cir. 2012). Thus, irrespective of whether defendants' request is viewed as a motion for leave to file a

successive motion to dismiss, or more properly as a motion for leave to amend a pending motion, it is permitted under Rule 12 and should be allowed.

In its Local Rule 78.5 notice (Dkt. 35), GSK failed to even mention the Seventh Circuit's decision in *Ennenga*. Instead, relying on two district court cases that predate *Ennenga* by some twenty years, GSK contended that Rule 12(g) prohibits defendants from amending their pending motion. (*Id.* at ¶ 6.) In their subsequently filed opposition brief (Dkt. 39), GSK continues to rely solely on cases that predate *Ennenga* and also attempts to distinguish *Ennenga*.[1] But, GSK's efforts to distinguish *Ennenga* lack any merit and its reliance on pre-*Ennenga* cases is misplaced.

GSK argues that the holding in *Ennenga* was limited to whether the "defendants had permanently waived a statute of limitations defense by omitting it from their Rule 12(b)(6) motion." (Dkt. 39 at 3.) Thus, according to GSK, "*Ennenga's* statement that 'Rule 12(g)(2) does not prohibit a new rule 12(b)(6) argument from being raised in a successive motion' is [] nothing new . . . because [i]t is merely an acknowledgement that . . . a party can raise a failure-to-state-a-claim defense in a post-answer motion under Rule 12(c) or in connection with trial motions." (*Id.* at 4.) GSK misconstrues the holding in *Ennenga*.

Contrary to GSK's argument, *Ennenga* was not limited to the propriety of raising a new 12(b)(6) defense in a post-answer motion, such as in a Rule 12(c) or trial motion. To the contrary, the Seventh Circuit specifically addressed in *Ennenga* whether the district court acted properly when it considered a successive motion to dismiss brought pursuant to Rule 12(b)(6). (A copy of the district court's order, which makes clear that the court was addressing a second

---

[1] GSK does cite one case that was decided after the Seventh Circuit's decision in *Ennenga*. But that case – *Muller v. Morgan*, No. 12 C 1815, 2013 WL 2422737 (N.D. Ill. June 3, 2013) – relies solely on a pre-*Ennenga* district court opinion for its construction and interpretation of Rule 12(g). *Muller*, 2013 WL 2422737, at *2 (citing *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, No. 02 C 4356, 2008 WL 2178150 (N.D. Ill. May 22, 2008)). Accordingly, the holding in *Muller* does not help GSK in its opposition to the request for leave to amend.

12(b)(6) motion rather some type of post-answer motion, is attached hereto as Exhibit A.) In rejecting plaintiffs' argument that Rule 12(g) prohibited the successive 12(b)(6) motion to dismiss, the Seventh Circuit affirmed the district court's "sound" decision that the defendants' failure to raise a statute of limitations and a *res judicata* defense in their earlier motion to dismiss did not bar defendants from raising those defenses "for the first time in a successive motion to dismiss." *Ennenga*, 677 F.3d at 773, 776 n.6.

Based on *Ennenga*, the Court should grant defendants' request for leave to amend their pending 12(b)(6) motion to dismiss. Indeed, given that *Ennenga* involved a successive 12(b)(6) motion, while this case involves a request to amend a not-yet-ruled-upon motion to dismiss, there is even stronger reason here to grant defendants' their requested relief.

## II. IN ANY EVENT, THE COURT SHOULD EXERCISE ITS DISCRETION AND GRANT DEFENDANTS LEAVE TO AMEND.

In any event, even if GSK were correct that Rule 12(g) technically prohibits defendants' proposed amendment (which it does not), it would nevertheless be a proper exercise of this Court's discretion to allow the amendment. *See Knight v. Beckler*, No. 10-cv-4039, 2010 WL 2925915, at *1 (C.D. Ill. July 21, 2010) (considering the merits of a second 12(b)(6) motion to dismiss in the interest of expediting the case, even if the second motion did not comply with the letter of Rule 12). As set forth in defendants' opening motion, courts routinely allow parties to assert additional Rule 12(b)(6) arguments – whether by amendment or a successive pre-answer motion – when the initial motion has not yet been ruled on, when the plaintiff has an opportunity to respond, when the amendment would promote judicial efficiency, when the amendment would not cause prejudice, and/or when the motion has not been brought for purposes of delay. (Dkt. 37 at ¶ 6 (citing cases).) Here, each of these criteria is easily met: (1) the Court has not yet ruled on the motion to dismiss; (2) GSK has ample opportunity to respond; (3) the amendment would

promote judicial efficiency; (4) the amendment would not prejudice GSK; and (5) the amendment is not brought for purposes of delay.

In the two briefs GSK has filed on this issue, GSK has never disputed that the Court has the discretion to allow the amendment. Nor does GSK dispute that many of the criteria courts use in determining whether to exercise their discretion are satisfied here. Rather, GSK argues only that the proposed amendment should not be allowed because it would not promote judicial efficiency and because GSK would somehow suffer prejudice. Both arguments are unavailing.

### A.  Granting Defendants Leave To Amend Would Promote Judicial Efficiency.

Granting defendants leave to amend would promote judicial efficiency because the motion to dismiss addresses the complaint's critical deficiencies. Before the Court and the parties expend considerable time and expense litigating the merits of GSK's claims, the Court should address, among other things, whether GSK has even stated a claim for breach of a valid and enforceable contract.[2] *See Perry v. Sullivan*, 207 F.3d 379, 383-84 (7th Cir. 2000) (motions to dismiss filed before the answer help a defendant understand the complaint clearly before responding). Given GSK's failure to attach the operative agreement, its inconsistent allegations regarding the vaccine product to be manufactured (TIV or QIV), its admitted attempt to modify the parties' agreement, and its termination of the project before the parties had reached agreement on material terms for the manufacture of the QIV vaccine, the complaint fails to meet the minimum requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and should be dismissed. (*See* Dkt. 37 at Ex. A.)

GSK counters that allowing leave to amend would not advance the case because the motion itself is rooted in a factual dispute that cannot be resolved at the 12(b)(6) stage. (Dkt. 39

---

[2] Defendants' amended motion to dismiss also seeks dismissal of GSK's quasi-contractual claims. (Dkt. 37 at Ex. A, pp. 13-15.)

at 4-6.) But GSK misunderstands the basis for defendants' motion. It is not, as GSK apparently believes, based on the reasons why GSK made the unilateral decision to abandon the TIV project and switch to the new QIV vaccine. Indeed, the reasons why GSK switched from TIV to QIV are not relevant to the merits of the amended motion to dismiss.

Defendants seek dismissal of the breach of contract claim to require that GSK allege the factual basis for its claim that a valid and enforceable contract existed for the manufacture of the QIV vaccine at the time it terminated the parties' relationship.[3] GSK should be required to correct this glaring pleading deficiency because: (a) GSK admittedly switched from TIV to QIV in late 2011 and in so doing abandoned the TIV project (Dkt. 19 at ¶¶ 6, 22); (b) GSK admittedly proposed a new plan for the development of QIV shortly before it terminated the vaccine project but fails to allege that either defendant accepted that "new plan" (Compl. at ¶ 28); (c) the parties' only written Agreement is limited on its face to the manufacture of TIV; and (d) GSK fails to attach to its complaint the operative contract documents that provide the basis for its breach of contract claim (Count I). Because it is highly unlikely that GSK can plead the existence of a valid and enforceable contract for the manufacture of QIV, dismissing the complaint now would promote the type of judicial efficiency the United States Supreme Court envisioned when it decided *Twombly*.

Moreover, as many courts have observed, Rule 12(g)'s purpose of preventing delay and piecemeal litigation must be read in conjunction with Federal Rule of Civil Procedure 1, which

---

[3] As set forth more fully in defendants' amended motion to dismiss, the outstanding material terms, all necessary for the parties to reach a new agreement, included, among other things: (1) a new PTS for QIV; (2) the number of validation batches required for QIV; (3) which party would pay for the new bulk material necessary to manufacture the required QIV validation batches; (4) which party would pay for the supply of syringe commodities; (5) how the parties could leverage the TIV work on the new QIV project; (6) what quality standards would govern Hospira Worldwide's QIV manufacturing efforts; and (7) a new timetable for performance. (Dkt. 37 at Ex. A, pp. 4-5.)

states that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *See Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (allowing second Rule 12(b)(6) motion to dismiss, which asserted new arguments that were available at the time of the first motion to dismiss, in the interests of judicial economy). Thus, not only would granting leave to amend promote judicial efficiency, but doing so would also be consistent with the letter and spirit of Federal Rule of Civil Procedure 1. *See Peoria Tazewell Pathology Group, S.C. v. Messmore*, No. 11-cv-4317, 2011 WL 4498937, at *2 (N.D. Ill. Sept. 23, 2011) (Darrah, J.) ("The Federal Rules of Civil Procedure must be administered 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" (quoting Fed. R. Civ. P. 1)). For this reason also, leave to amend should be granted.

### B. Granting Defendants Leave To Amend Would Not Prejudice GSK.

Finally, the Court should exercise its discretion and grant defendants leave to amend because doing so would not prejudice GSK. This matter is still in its infant stages. The pending motion has not yet been ruled on. The Court just recently entered its scheduling order. (Dkt. 41.) The parties have not yet taken any discovery. And trial is more than a year away. Under these circumstances, there is no conceivable prejudice to GSK if the Court were to grant the requested relief.

GSK nevertheless contends that that it would suffer prejudice if the amendment were allowed because it would have to "re-research and re-brief its entire opposition" to address defendants' choice-of-law analysis, which concludes that Illinois law governs all but one of GSK's claims. (Dkt. 39 at 4-5; *see also* Dkt. 37 at Ex. A, pp. 6-8.) According to GSK,

defendants have in effect waived the right to raise the choice-of-law issue now because it was not addressed in their motion to transfer.

*First*, defendants did not waive their right to present arguments regarding what substantive law applies. Indeed, determining what substantive law applies is such a basic, threshold question that courts make that determination at various stages of the litigation and even when the parties have not raised the issue at all. *See Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co.*, No. 00 C 7084, 2001 WL 1467762, at *4 n.2 (N.D. Ill. Nov. 19, 2001); *see also Jaurequi v. John Deere Co.*, 986 F.2d 170, 171-72 (7th Cir. 1993) (following transfer under section 1404(a)); *Giguere v. Vulcan Materials Co.*, No. 87 C 7043, 1988 WL 107387, at *1 N.D. Ill. Oct. 13, 1988) (on a motion to dismiss); *Schwartz v. Nat'l Van Lines, Inc.*, 375 F. Supp. 2d 690, 697-99 (N.D. Ill. 2005) (on summary judgment); *Olympia Express, Inc. v. Linee Aeree Italiane S.P.A.*, No. 02 C 2858, 2007 WL 641557, at *18-20 (N.D. Ill. Feb. 27, 2007) (on post-trial motions).

*Second*, now is a particularly good time to address the choice-of-law issues because the case was only recently transferred to this Court. *See Jaurequi*, 986 F.2d at 172; *Club Assistance Program, Inc. v. Zukerman*, 594 F. Supp. 341, 344 n.5 (N.D. Ill. 1984). As Judge Shadur explained in *Club Assistance Program, Inc.*, following transfer, the transferee court is "free to determine [what state] law applies and therefore take to take a fresh look at matters." 594 F. Supp. at 344 n.5.

Here, the parties agree that New York choice-of-law rules apply. But, as set forth more fully in defendants' amended motion to dismiss (Dkt. 37 at Ex. A, pp. 6-8), this Court, applying its own interpretation of New York's choice-of-law rules, must determine whether New York or

Illinois law governs GSK's claims. This would be the case even if the Court denied defendants leave to amend and even if defendants had not raised the issue in their amended motion.

*Third*, GSK's claim of prejudice due to the "extra work" it will have to undertake is not a reason to deny defendants' request for leave. While defendants question that claim, especially in light of the two briefs GSK chose to file opposing this straightforward and proper request, the reality is that defendants' amended motion raises important issues that will have to be addressed at some point. There is simply no reason why those issues should not be addressed now, at the beginning of this dispute, as opposed to some later date in these proceedings.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in their opening motion, Hospira Worldwide, Inc. and Hospira, Inc. respectfully request that the Court grant them leave to file their amended motion to dismiss and supporting memorandum of law.

Dated: September 5, 2013

HOSPIRA WORLDWIDE, INC. AND HOSPIRA, INC.

By /s/ Christopher D. Liguori
One of Their Attorneys

Christopher D. Liguori
Timothy A. Hudson
Katherine M. O'Brien
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com

# EXHIBIT A

Order Form (01/2005) Case: 3:06-cv-50117 Document #: 96 Filed: 12/14/07 Page 1 of 8 PageID #:486

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 50117 | **DATE** | 12/14/2007 |
| **CASE TITLE** | Ennenga v. Starns | | |

**DOCKET ENTRY TEXT:**

Defendants' Federal Rule of Civil Procedure 12(b)(6) motions to dismiss [71] [72] [73] are granted in part and denied in part. Counts II, III, and IV are dismissed with prejudice. Count I remains pending.

■ [ For further details see text below.]

Docketing to mail notices.

## STATEMENT

### I. BACKGROUND

Plaintiffs are George Ennenga and India Ennenga, a minor, by her father and next friend, George Ennenga. Their four-count second amended complaint alleges legal malpractice and breach of fiduciary duty with respect to preparation of estate planning documents and trust administration for plaintiffs' parents/grandparents, Ida and Thomas Ennenga. Plaintiffs claim harm as third party beneficiaries. Plaintiffs are citizens of New York. Defendants are citizens of various states. Starns is a citizen of Minnesota, is married to George Ennenga's sister, and is an attorney licensed to practice in Minnesota and Illinois. Starns accepted appointment as Trustee of the Ida Louise Ennenga Trust on July 3, 2004. Stortz is a citizen of Minnesota and is licensed to practice law in Minnesota. Leonard, Street and Deinard, P.A. (LSD) is a Minnesota corporation with its principal place of business in Minnesota and is a law firm employing Starns and Stortz. Burt is an Illinois citizen and an attorney licensed to practice in Illinois. Snow, Hunter, Whiton and Fishburn, Ltd. (SHWF) is an Illinois corporation with its principal place of business in Illinois and is a law firm employing Burt. Ida Ennenga died on May 19, 2004, and Thomas Ennenga died on June 20, 2004. Their estates were probated in Stephenson County, Illinois. In Count I, India alleges legal malpractice against all defendants for failure to effectuate the intent of the testator because India stands to take a share disproportionate to the other Ennenga grandchildren. In Count II, George alleges legal malpractice against all defendants for failure to effectuate the intent of Ida and Thomas Ennenga in drafting the trust documents conveying their estate to their three children and seven grandchildren. Count III is a breach of fiduciary duty claim by both plaintiffs against defendant Starns for his administration of the trust, alleging he wrongfully sold the family homestead to an outside party instead of allowing George to purchase it. In Count IV both plaintiffs claim that defendants Burt and his Illinois law firm, SHWF, aided and abetted the breach of fiduciary duty alleged in Count III. On March 14, 2007, defendants filed three separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Starns, Stortz and LSD filed a motion to dismiss Counts I, II, and III [71, 78]. Defendant Burt moved to dismiss the entire complaint [72], as did defendant SHWF [73].[1]

Case: 3:06-cv-50117 Document #: 96 Filed: 12/14/07 Page 2 of 8 PageID #:487

| STATEMENT |
|---|

## II. DISCUSSION

Common to all three motions to dismiss are allegations that the complaint must be dismissed pursuant to the statute of limitations and the doctrine of res judicata. The court begins with an analysis of these two issues.

### A. Statute of Limitations

Defendants argue that Count II, George's legal malpractice claim, is time-barred by the Illinois statute governing legal malpractice claims, 735 ILCS 5/13-214.3. Initially, plaintiffs contend that defendants waived the statute of limitations defense since they did not raise it in their Rule 12(b)(6) motions to dismiss the first amended complaint. Second, plaintiffs argue that the statute of limitations defense is inappropriately brought in the defendants' motions to dismiss because the facts necessary to defendants' argument are not found within the four corners of the complaint. Third, plaintiffs argue that the Illinois statute upon which defendants rely was repealed, or in the alternative, that it is inapplicable. Finally, plaintiffs suggest that the court apply the Minnesota statute of limitations governing legal malpractice claims. Minn. Stat. § 541.05 subd. 1 (2004); Antone v. Mirviss, 720 N.W.2d 331, 335 (Minn. 2006) (applying § 541.05 to legal malpractice claim).

#### 1. Waiver

Plaintiffs contend that, pursuant to Federal Rule of Civil Procedure 12(g), defendants waived the statute of limitations defense by not raising it in their original 12(b)(6) motions to dismiss the first amended complaint. Plaintiffs, however, misapply Rule 12(g). The Seventh Circuit recognizes that Rule 12(b) motions function "to clarify a plaintiff's complaint by forcing the plaintiff, under penalty of dismissal, to state in plain and concise terms a claim under which relief could be granted." Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000). "Requiring the defendant to plead all affirmative defenses before the complaint has been clarified would defeat the purpose of the pleading rules." Id. at 383.

Federal Rule of Civil Procedure 8 contains the general rules of pleading. Specifically, Rule 8(c) requires that affirmative defenses be included when "pleading to a preceding pleading." "The statute of limitations defense need not be raised in a pre-answer motion. Rather, under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading." Santos v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO, 619 F.2d 963, 967 (2d Cir. 1980) (footnote omitted). "Rule 7 distinguishes between 'pleadings,' which include 'an answer,' and 'motions and other papers.' This distinction clarifies that the use of the word 'pleading' in Rule 8 includes the answer, but not other motions." Perry, 207 F.3d at 382. Rule 12(b) states that "[e]very defense . . . shall be asserted in the responsive pleading . . . except that the following defenses may at the option of the pleader be made by motion." These rules make it clear that affirmative defenses must be asserted in the answer to the complaint, but that certain defenses may be asserted separately. "Although the statute of limitations is ordinarily an affirmative defense that must be pleaded under Fed. R. Civ. P. 8(c), a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred." Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005). However, Rule 12 does not require defendants "to affirmatively raise the statute of limitations defense by motion." Perry, 207 F.3d at 382. Thus, the statute of limitations defense must be asserted in the answer and may, but need not, be asserted in a 12(b)(6) motion.

Nonetheless, relying on Rule 12(g), plaintiffs contend that defendants waived the limitations defense by not including it in their motions to dismiss the first amended complaint. Rule 12(g) states that when "a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2)." Subdivision (h)(2) states "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading . . . or by motion for judgment on the pleadings." Therefore, because the statute of limitations defense may be raised in a motion

### STATEMENT

to dismiss for failure to state a claim upon which relief can be granted, it is excepted from the Rule 12(g) waiver provision.

This conclusion is sound as these two provisions have been construed to support the finding that when a defendant waits until its answer to assert the statute of limitations defense, defendant has not waived it for failure to raise it in earlier motions. Santos, 619 F.2d at 967. In contrast, cases cited by plaintiffs to demonstrate courts' enforcement of Rule 12(g) involved personal jurisdiction and sufficiency of process issues. These issues, unlike the statute of limitations defense, are expressly waived under Rule 12(h)(1) ("A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . if omitted from a motion in the circumstances described in subdivision (g)."). The Seventh Circuit has held that a defendant did not waive his right to raise the limitations defense "by waiting to file it until after the 12(b)(6) motions had run their course." Perry, 207 F.3d at 383, see also Seals v. Compendia Media Group, 290 F. Supp. 2d 947, 951 (N.D. Ill. 2003). Consequently, defendants have not waived their limitations defense.

#### 2. Facts Not Found Within Four Corners of Complaint

Plaintiffs next argue that including the statute of limitations defense in a 12(b)(6) motion is inappropriate because the facts necessary to the contention are not included on the face of the complaint. Indeed, Rule 12(b) states that when a 12(b)(6) motion includes "matters outside the pleading . . . and not excluded by the court, the motion shall be treated as one for summary judgment." Notwithstanding this express language, the Seventh Circuit recognizes an exception that permits the court's discretion to "also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (quotation marks omitted). The threshold for judicial notice is "indisputability." Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354 (7th Cir. 1995). Once this threshold is met, the fact at issue must be "either: (1) 'generally known within the territorial jurisdiction of the trial court' or (2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Limestone Dev. Corp. v. Vill. of Lemont, 473 F. Supp. 2d 858, 867-868 (N.D. Ill. 2007) (quoting Fed. R. Evid. 201(b)). A court record is generally recognized as "a source 'whose accuracy cannot reasonably be questioned.'" Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)).

In this case, plaintiffs object to defendants' inclusion of the claim notice given by the Circuit Court of the Fifteenth Judicial Circuit, County of Stephenson, Probate Division. As a court record, this document is one whose accuracy cannot reasonably be questioned. In fact, plaintiffs do not even dispute the fact that it contains–namely that letters of office were issued on June 24, 2004, in the death of Thomas Ennenga. Moreover, plaintiffs state in the complaint that Thomas Ennenga died on June 20, 2004, and that his estate was probated in Stephenson County, Illinois. Judicial notice of this claim notice is therefore appropriate.

Although the date that letters of office were issued itself is not disputed, the heart of plaintiffs' argument is that their complaint does contain allegations which would compel the court's application of equitable tolling of the statute of limitations. Thus, plaintiffs contend that if this court chooses to take judicial notice of the claim notice, it must convert defendants' Rule 12(b)(6) motions into motions for summary judgment, thus providing plaintiffs the opportunity to demonstrate the applicability of equitable tolling.

Illinois law provides that equitable tolling applies against a defendant who fraudulently conceals the existence of a cause of action from the plaintiff through "affirmative acts or representations that are calculated to lull or induce a claimant into delaying filing his claim or to prevent a claimant from discovering his claim." Barratt v. Goldberg, 296 Ill. App. 3d 252, 257 (1998) (discussing 735 ILCS 5/13-215). "Illinois courts have consistently held that if the plaintiff discovers the fraudulent concealment and a reasonable time remains within the relevant limitations period, section 13-215 of the Code will not apply to lengthen the limitations period." Id. at 258. Furthermore, "even when a fiduciary fraudulently conceals a cause of action, the relevant inquiry is still

Case: 3:06-cv-50117 Document #: 96 Filed: 12/14/07 Page 4 of 8 PageID #:489

## STATEMENT

whether a reasonable time remains in the limitations period to file suit. If so, then the plaintiff must file within the statutory period or else be time barred." Id. Additionally, "[b]ald allegations of conspiracy and concealment do not warrant delay in disposing of the question of the applicability of the statute of limitations. The statute of limitations does not toll automatically." Baker v. F & F Inv., 420 F.2d 1191, 1198 (7th Cir. 1970).

The fraudulent concealment alleged by plaintiffs in their complaint consists of an e-mail mistakenly sent to plaintiff George. The e-mail was sent on August 8, 2004, by defendant Burt, and was intended for defendant Starns. As will be discussed below, plaintiffs had six months from June 24, 2004, the date of the issuance of the letters of office, in which to file their claims. The court need not address whether the e-mail suggests any fraudulent concealment by defendants because plaintiffs here, through mistaken receipt of this e-mail, discovered any such possible conduct by defendants. Plaintiffs had a reasonable amount of time in which to file their complaint–namely the period from August 8 through December 24, 2004. Thus, plaintiffs have failed to demonstrate the applicability of equitable tolling. Accordingly, the court takes judicial notice of the claim notice from the probate court and declines to convert defendants' 12(b)(6) motions to motions for summary judgment.

### 3. Validity and Applicability of Illinois Statute of Limitations

Plaintiffs argue that the history of the statute of limitations at issue warrants finding it invalid. The contention is without merit. The statutory provision upon which defendants rely states that:

> When the injury caused by the act or omission does not occur until the death of the person for whom the professional services were rendered, the action may be commenced within 2 years after the date of the person's death unless letters of office are issued or the person's will is admitted to probate within that 2 year period, in which case the action must be commenced within the time for filing claims against the estate or a petition contesting the validity of the will of the deceased person, whichever is later, as provided in the Probate Act of 1975.

735 ILCS 5/13-214.3(d). This provision was repealed in 1995 by Public Act 89-7. Petersen v. Wallach, 198 Ill. 2d 439, 443 n.1 (2002). However, Public Act 89-7 was declared "unconstitutional in its entirety." Id. (citing Best v. Taylor Mach. Works, 179 Ill. 2d 367 (1997)). Thus the repeal of subsection (d) is invalid and subsection (d) was reinstated following Best.[2]

Yet, plaintiffs urge that subsection (d) does not apply to them since their complaint alleges injury prior to Thomas Ennenga's death and the statute addresses injury that does not occur until the death of the person for whom the legal services were provided. However, plaintiffs do not elaborate, and the court's review of the complaint reveals no such pleading. In fact, defendants' argument to the contrary is well-taken. Because the trust at issue could have had no legal effect until Thomas Ennenga's death, no injury could have occurred prior to his death. Defendants note that Thomas could have amended (which he did several times) or even completely revoked his trust at any time prior to his death. Plaintiffs did not sustain any injury until this time, despite alleged acts by defendants prior to Thomas' death. This puts the case directly within the purview of subsection (d).

### 4. Applicability of Minnesota Statute of Limitations

Subsection (d) of the Illinois statute therefore applies, unless, as plaintiffs alternatively contend, the Minnesota statute of limitations applies. The general rule that the law of the forum applies is consistent with the facts of this case. As in this case, a federal court sitting in diversity "applies the substantive law of the state in which it sits." Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir. 1977) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). "State law barring an action because of a statute of limitations is sufficiently 'substantive,' in the Erie sense, that a federal court in that state exercising diversity jurisdiction must respect it." Id. (citing Guaranty Trust Co. v. York, 326 U.S. 99 (1945)). "Where the laws of more than one jurisdiction are at least arguably in issue, the Erie reference to the law of the forum state includes that state's choice of law rules." Id. (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). "Ordinarily, Illinois follows the Restatement (Second) of

### STATEMENT

Conflict of Laws (1971) in making choice-of-law decisions." Morris B. Chapman & Assocs., v. Kitzman, 193 Ill. 2d 560, 568 (2000). In applying the Restatement, Illinois "uses a most-significant-contacts approach." Wreglesworth ex rel. Wreglesworth v. Arctco, Inc., 316 Ill. App. 3d 1023, 1031 (2000). Under this approach, the court conducts an "interest analysis." Id. The Restatement sets forth several general factors that Illinois courts consider, including "the relevant policies of the forum" and "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue." Morris B. Chapman, 193 Ill. 2d at 568-69 (quoting Restatement (Second) of Conflict of Laws § 6(2)(b) and (c) (1971)).

The basis of plaintiffs' argument in favor of the Minnesota statute of limitations is the fact that defendant attorneys Starns and Stortz and their law firm, LSD, are Minnesota citizens whose "wrongful and tortious conduct occurred in Minnesota." Presumably, plaintiffs are asserting that an interest analysis weighs in favor of applying the longer Minnesota statute of limitations. Plaintiffs contend that Illinois public policy favors regulating attorneys; therefore, the longer Minnesota statute of limitations would better serve this policy than the shorter Illinois limitation.

However, as defendants observe, the purpose of statutes of limitation is to prevent stale claims, not to regulate attorney conduct. See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill. 2d 129, 132 (1975). Illinois' interests in this case include the facts that two defendants are Illinois citizens, the clients were Illinois citizens, and the res of the trust, the family homestead, is situated in Illinois. Therefore, Illinois' interest is as strong, if not stronger, than Minnesota's. Moreover, Minnesota's interest in regulating the conduct of its attorneys is achieved through its rules of professional responsibility. Fundamentally, though, plaintiffs chose the Illinois forum. Plaintiffs' attempt at a reverse forum-shopping argument is thus unavailing, and the law of Illinois applies.

### 5. Illinois Statute of Limitations Bars Count II

Subsection (d) of the Illinois statute of limitations provides for a two year statute of limitations for a legal malpractice claim in which the injury alleged did not occur until the death of the client. 735 ILCS 5/13-214.3(d). However, the statute includes an exception for situations in which letters of office are issued within the two year period. This exception applies here as the letters of office were issued within four days of the client's death. Under the exception, subsection (d) directs that the statute of limitations will be the time period for contesting the validity of the will as provided in the Illinois Probate Act 755 ILCS 5/8-1(a). That statute allows six months for such action. 755 ILCS 5/8-1(a).

Therefore, plaintiffs had six months from the issuance of the letters of office to file their complaint. Even under the relation back provision of Federal Rule of Civil Procedure 15(c)(2), Count II is outside the statute of limitations. Plaintiffs' original complaint must have been filed by December 24, 2004. However, plaintiffs' initial complaint was filed on June 19, 2006, well beyond the expiration of the statute of limitations. Accordingly, George's legal malpractice claim in Count II must be dismissed as time-barred.

### B. Res Judicata

Defendants next argue that Count III, which alleges breach of fiduciary duty, is barred under the doctrine of res judicata. Initially, plaintiffs respond that the defense of res judicata has been waived by defendants' failure to include it in their Rule 12(b)(6) motions to dismiss the first amended complaint. Plaintiffs reallege the arguments they made under Rule 12(g) with respect to the statute of limitations waiver. Like the statute of limitations, res judicata is an affirmative defense under Rule 8(c). Forty One News, Inc. v. County of Lake, 491 F.3d 662, 664 (7th Cir. 2007). For the reasons discussed in section II.A.1. above, these waiver arguments also are without merit.

Accordingly, the court addresses the defense of res judicata with respect to Count III. "The essential

Case: 3:06-cv-50117 Document #: 96 Filed: 12/14/07 Page 6 of 8 PageID #:491

## STATEMENT

elements of res judicata are (1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or privies in the two suits." Smith v. City of Chi., 820 F.2d 916, 917 (7th Cir. 1987); see also River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302 (1998). Importantly, "res judicata bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." Highway J Citizens Group v. U.S. Dep't of Transp., 456 F.3d 734, 741 (7th Cir. 2006) (quotation marks omitted); see also River Park, 184 Ill. 2d at 302. Illinois courts recognize an identity of cause of action despite "the assertion of different kinds or theories of relief . . . if a single group of operative facts give [sic] rise to the assertion of relief." River Park, 184 Ill. 2d at 307 (quotation marks omitted); see also id. at 310 (adopting the transactional test and rejecting the same evidence test).

     The court will exercise its discretion to take judicial notice of both the August 9, 2005, chancery suit filed by plaintiffs against defendant Starns (Stephenson County Case No. 05 CH 117) as well as the Circuit Court's involuntary dismissal of that suit on November 16, 2005. The elements will be analyzed in reverse order. First, as in this case, the chancery suit consisted of plaintiffs George and India and defendants Starns and Burt. The parties in this suit are thus identical to those in the state court suit with respect to Count III.

     Second, the causes of action are also identical. Although the chancery suit sought equitable relief in the form of a temporary restraining order and this suit seeks damages, a single group of operative facts gave rise to each. The chancery suit sought to prevent defendant's sale of the family homestead while this suit seeks damages from the sale that occurred. While the chancery suit was pending, defendant sold the homestead on September 14, 2005. Thus, plaintiffs could have amended their complaint to allege that the sale was a breach of fiduciary duty resulting in damages. Rather, plaintiffs failed to respond to the notice given of the November 16, 2005, hearing, failed to appear at that hearing, and consequently had their case involuntarily dismissed pursuant to 735 ILCS 5/2-619(9) ("That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."). Although the fact giving rise to the chancery claim was defendant's plan to sell the homestead, whereas in this case the homestead already had been sold, "it is proper to examine the 'facts' at a sufficient level of specificity to ensure fair notice to the parties and predictability." Tartt v. N.W. Cmty. Hosp., 453 F.3d 817, 822 (7th Cir. 2006). The plan to sell and the sale itself both were alleged by plaintiffs to be a breach of the fiduciary duty owed by defendant, in his capacity as trustee, to the plaintiffs, as beneficiaries. Moreover, under Illinois law, these qualify as identical causes of action because once the sale actually occurred, plaintiffs could have raised the claims they now assert.

     Third, the requirement of a final judgment on the merits also has been met. "[F]ederal courts must give a state court judgment the same preclusive effect that it would receive under state law." Wilhelm v. County of Milwaukee, 325 F.3d 843, 846 (7th Cir. 2003) (discussing 28 U.S.C. § 1738). Illinois Supreme Court Rule 273 is clear: "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." The order of dismissal by the chancery court was involuntary, with prejudice, final and appealable. Plaintiffs offer no statute to the contrary. Plaintiffs did not appeal the chancery court's dismissal. Therefore, the involuntary dismissal operates as a final judgment on the merits.

     Citing Weisman v. Schiller, DuCanto & Fleck, 314 Ill. App. 3d 577 (2000), plaintiffs argue that an earlier bench trial in equity should not deprive them of their state constitutional right to a jury trial for damages in tort. Plaintiffs' reliance on Weisman is misplaced. In Weisman, plaintiff's suit for legal malpractice was held not barred by res judicata. Id. at 580. The earlier suit, however, was distinguishable from the earlier suit in the instant case. Ms. Weisman had been the defendant in a fee petition action initiated by her attorney. Id. As an affirmative defense to that petition, Ms. Weisman argued that the law firm had been negligent. Id. Significantly, the Weisman court found that Ms. Weisman could not have counterclaimed in the fee petition suit, and that even

**STATEMENT**

if she could have, she would not have been entitled to a jury trial under the Illinois Marriage and Dissolution of Marriage Act. Id.

To the contrary, plaintiffs in this case could have had a jury trial on their fiduciary duty claim if they had responded to notice, amended their complaint, and attended the hearing on November 16, 2005. Plaintiffs' failure to do so does not somehow render the doctrine of res judicata inapplicable. Therefore, Count III is dismissed.

Likewise, based on the above analysis, Count IV is dismissed with respect to defendant Burt since he was also a party in the 2005 Stephenson County case. Moreover, the doctrine of res judicata bars Count IV with respect to defendant SHWF. The elements of identical causes of action and final judgment on the merits are satisfied for the reasons discussed in the analysis of Count III. The fact that SHWF was not a defendant in the Stephenson County case does not preclude the application of res judicata. "[A] judgment for either the master or servant, arising out of an action predicated upon the alleged negligence of the servant, bars a subsequent suit against the other for the same claim of negligence where the agency relationship is not in question." Towns v. Yellow Cab, 73 Ill. 2d 113, 122-23 (1978); see also Mooney v. Cent. Motor Lines, 222 F.2d 572, 573 (6th Cir. 1955). "This result obtains even though the defendant in the subsequent suit was not a party to the first action and despite the fact the cases find that a master and servant are technically not in privity." Towns, 73 Ill. 2d at 123.

The agency relationship between defendants Burt and SHWF is not in question. Plaintiffs assert that Burt was a partner with the law firm, SHWF, at all material times alleged in the complaint. Accepting this allegation as true for purposes of the motion to dismiss, the court recognizes an agency relationship between Burt and SHWF. Based on this relationship, the claim against SHWF in Count IV is barred by the Towns rule, unless it is predicated on acts of SHWF, rather than on acts of Burt. Without an allegation of an "independent wrong" against SHWF, any liability of SHWF is "entirely derivative." See Towns, 73 Ill. 2d at 123. Plaintiffs fail to allege conduct by SHWF, independent of conduct by Burt.[3] The complaint contains allegations of conduct by defendant Burt. Specifically, Burt's facilitation of defendant Starns' breach of fiduciary duty to plaintiffs when Burt assisted Starns in denying plaintiff George the opportunity to purchase the family homestead and in selling it to a third party. There is, however, no independent conduct by SHWF alleged. Plaintiffs allege that estate planning documents were executed in Burt's Illinois office and that Thomas Ennenga made a videotape evidencing his testamentary intent in Burt's Illinois office. Even assuming that Burt's Illinois office at the time was in the offices of SHWF, plaintiffs have failed to plead any independent wrongful conduct by SHWF. Plaintiffs do specifically allege that Burt and SHWF "provid[ed] legal assistance and support" with respect to the preparation of the estate planning documents; however, this is irrelevant to aiding and abetting the breach of fiduciary duty alleged in Counts III and IV. Count III is based upon the alleged wrongful denial of plaintiff George's attempts to purchase the family homestead, not on the drafting of the estate planning documents. Plaintiffs' allegation in Count IV that SHWF aided and abetted the breach alleged in Count III is merely conclusory, and thus fails to allege sufficiently any independent conduct by SHWF. Since "[r]es judicata is otherwise applicable," the claim against SHWF is barred because it is brought only under a theory of derivative liability. See Towns, 73 Ill. 2d at 123. Because suit against Burt is barred by res judicata, the claim against SHWF is also barred as the two defendants are considered as one "unified" tortfeasor. See Towns, 73 Ill. 2d at 124. Accordingly, Count IV is dismissed in its entirety.

C. Count I

Finally, defendants seek to dismiss India's legal malpractice claim in Count I for failure to state a claim upon which relief can be granted.[4] Essentially, defendants Starns, Stortz and LSD argue that by relying on the transcript of the video of Thomas Ennenga, plaintiffs have pled themselves out of court.[5] Defendants contend

## STATEMENT

that the video negates India's claims about the intent of Thomas Ennenga. Therefore, defendants assert that Count I must be dismissed because, without alleging an intent by the testator that was not effectuated by the defendants, it fails to state a claim. On the other hand, plaintiffs assert that the video evidences an intent by the testator to treat India equally with the other grandchildren.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002). Accordingly, the court accepts as true plaintiffs' allegations that Thomas did not intend to discriminate against India and, in fact, intended to treat her equally with all his grandchildren. Plaintiffs did allege the requisite intent and, therefore, have stated a claim upon which relief could be granted. Whether plaintiffs will be able to use the video to prove their allegation is not properly before the court on a 12(b)(6) motion. Thus, at this stage, dismissal is inappropriate and the court denies defendants' motions to dismiss Count I.

### III. CONCLUSION

For all of the above reasons, defendants' motions to dismiss Count I are denied. The motions to dismiss Counts II, III and IV are granted.

---

1. Although Count III was only alleged against defendant Starns, defendants Burt and SHWF each included arguments to dismiss Count III since Count IV, against these two defendants, is predicated upon their aiding and abetting the conduct alleged in Count III.

2. The court notes plaintiffs' observation that "perusal of the 2006 Illinois Procedure Rules will not reveal 735 ILCS 5/13-214.3(d)." Plaintiffs appear to make a policy or legislative intent argument that the Best declaration of unconstitutionality had nothing to do with subsection (d) and that it should somehow remain repealed as under Public Act 89-7. This argument is irrelevant as the Act was declared unconstitutional in its entirety. Moreover, the Illinois Supreme Court was clear in Petersen that subsection (d) was alive and well.

3. Although the Towns decision was in Illinois state court which operates under a standard of fact pleading and this action is in federal court that operates under notice pleading, plaintiffs nonetheless bear the burden of alleging facts sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

4. The court notes that Count I, because it is brought on behalf of a minor, is not subject to dismissal as time-barred. The Illinois Supreme Court held that the statutes of limitation and repose in subsections (b) and (c), respectively, of 735 ILCS 5/13-214.3, are tolled until majority is attained. DeLuna v. Burciaga, 223 Ill. 2d 49, 65 (2006) (analyzing 735 ILCS 5/13-214.3(e)). The DeLuna court's analysis applies to subsection (d) as well.

5. Although Count I is alleged against all defendants, only defendants Starns, Stortz, and LSD make this argument [78].