**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLAXOSMITHKLINE BIOLOGICALS, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-cv-4346 |
| v. | ) | |
| | ) | Hon. John W. Darrah |
| HOSPIRA WORLDWIDE, INC. and | ) | |
| HOSPIRA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR AMENDED MOTION TO DISMISS**

Christopher D. Liguori
Timothy A. Hudson
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com

*Counsel for Defendants Hospira
Worldwide, Inc. and Hospira, Inc.*

Defendants Hospira Worldwide, Inc. and Hospira, Inc. (collectively "defendants") respectfully submit this memorandum of law in support of their amended motion dismiss plaintiff GlaxoSmithKline Biologicals, S.A.'s ("GSK") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

This lawsuit stems from a Toll Manufacturing Agreement ("Agreement") between Hospira Worldwide and GSK for the manufacture of flu vaccine in the United States. (A copy of the Agreement is attached hereto as Exhibit 1.)[1] The Agreement consisted of a document setting forth the framework for an agreement ("framework document"), including general parameters, terms, and conditions for the parties' relationship. (Ex. 1.) The Agreement also included a series of schedules that set out such essential contract terms as payment milestones and the time for performance (Schedule 3), the actual vaccine product to be manufactured (a three-strain flu vaccine called "Trivalent" or "TIV") and the agreed technical requirements for manufacturing that vaccine (Schedule 5), and the quality standards that would govern the manufacturing work (Schedule 7). (*Id*. at Schs. 3, 5, and 7.) (A copy of the final version of Schedule 5 for TIV is attached hereto as Exhibit 2.) The Schedules were an "integral part" of the parties' agreement because, among other things, without them the parties would not know which product to make,

---

[1] When addressing a motion to dismiss, courts may consider documents outside the pleadings "if they are referred to in the plaintiff's complaint and are central to his claim." *Wallis v. Card Servs. Int'l Inc.*, No. 10 C 7250, 2012 WL 1866374, at *7 (N.D. Ill. May 22, 2012) (Darrah, J.); *see also Thompson v. Ill. Dep't Prof. Reg.*, 300 F.3d 750, 753-54 (7th Cir. 2002). A court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (court make take judicial notice of matters of public record, including facts not in dispute); *Henson v. CSC Credit Servs*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that the district court "properly considered the public court documents [from an earlier Indiana state court case] in deciding the defendants' motion to dismiss"). The Agreement, including its Schedules, and the pleadings and supporting materials filed in connection with the motion to transfer, easily meet these standards and the Court may consider them in connection with the instant motion.

how and when Hospira Worldwide would be paid, and the time for Hospira Worldwide's performance. (Exs. 1, 2.)

Approximately one year into the project, GSK decided to abandon the TIV manufacturing project and asked Hospira Worldwide, instead, to manufacture a new four-strain flu vaccine called "Quadrivalent" or "QIV." (Dkt. 19 (Chevallier Decl.) at ¶ 22.) While the parties were still negotiating essential terms and conditions for the manufacture of the new QIV flu vaccine, GSK pulled the plug on the entire vaccine project. (Dkt. 16 at Ex. A (Tran Decl.), ¶ 22; Compl. at ¶ 28.) This lawsuit followed.

GSK originally filed its complaint in the Southern District of New York. Because the lawsuit had no meaningful connection to the Southern District of New York, defendants moved to transfer the case to the Northern District of Illinois, or in the alternative, to dismiss. (Dkt. 15, 16.) Defendants maintained that this lawsuit belonged in Illinois because, among other things, Illinois was the forum that was most closely connected to the parties, the witnesses, the documents and the relevant events. (*E.g*., Dkt. 16.)

On May 21, 2013, Judge Castel of the Southern District of New York granted defendants' motion to transfer to this Court. (Dkt. 23.) The Court concluded:

> [D]efendants have carried their burden of demonstrating that transfer is appropriate. Although plaintiff's choice of forum would ordinarily be entitled to considerable deference, neither GSK nor the underlying facts has any meaningful connection to New York and transferring the action will significantly ease the burden of litigation on defendants while not materially increasing the burden on plaintiff. Perhaps most importantly, transferring the case will help ensure that material non-party witnesses are available to give live testimony, should the case proceed to trial.

(*Id*. at 4.) In granting the motion, the Court "declined to reach so much of the motion as seeks dismissal of the claims." (*Id*. at 1.)

This Court should dismiss the complaint for several reasons. *First*, GSK's breach of contract claim (Count I) should be dismissed because it fails to allege the existence of a valid and enforceable contract. Having abandoned the TIV vaccine project, and having failed by its own admission to reach agreement on material terms for the manufacture of the QIV vaccine, GSK cannot now sue for breach of an agreement that was never finalized. *Second*, in the event the Court declines to dismiss Count I in its entirety, it should nevertheless dismiss Count I as it relates to Hospira, Inc. because Hospira, Inc. was not a party to the Agreement and the complaint utterly fails to allege the elements necessary to pierce the corporate veil and hold Hospira, Inc. liable under some form of alter ego or other alternative theory. *Third*, the Court should dismiss GSK's quasi-contractual claims against Hospira, Inc. and Hospira Worldwide (Counts II and III) because they expressly incorporate the earlier complaint allegations asserting the existence of an enforceable contract and they are not brought in the alternative to Count I.

## **BACKGROUND**

Hospira, Inc. is a worldwide provider of injectable drugs, infusion technologies and other pharmaceutical products that help improve the productivity, safety and efficacy of patient care. (Compl. at ¶11; Dkt. 16 at Ex. A, ¶ 4.) Hospira, Inc.'s business includes the One 2 One Contract Manufacturing business ("One 2 One business"), which is conducted through Hospira, Inc.'s wholly-owned subsidiary, Hospira Worldwide. (Compl. at ¶ 10; Dkt. 16 at Ex. A, ¶5.) The One 2 One business provides global contract manufacturing services to produce injectable products for some of the world's major proprietary pharmaceutical and biotechnology companies. (Dkt. 16 at Ex. A, ¶ 6.)

On or about December 31, 2010, Hospira Worldwide and GSK entered into an Agreement for the manufacture of flu vaccine. (Compl. at ¶ 15; Ex. 1 (attached hereto).) The parties ultimately agreed that the vaccine product Hospira Worldwide would manufacture for

3

GSK was the TIV vaccine, as set forth in Schedule 5 – the Process Transfer Specification ("PTS").[2] (Ex. 2.) Under the terms of the framework document, and in accordance with the accompanying Schedules, GSK agreed to transfer the technology, components, and bulk material needed to manufacture the vaccine product to Hospira Worldwide and Hospira Worldwide agreed to manufacture TIV at Hospira, Inc.'s plant in McPherson, Kansas. (Compl. at ¶¶ 15-17; Ex. 1.)

In or around October 2011, however, GSK informed Hospira Worldwide that GSK would delay its regulatory submission of TIV to the U.S. Food and Drug Administration ("FDA") until 2012. (Dkt. 16 at Ex. A, ¶ 16.) About one month later, in approximately November 2011, GSK informed Hospira Worldwide that GSK was abandoning the TIV project altogether and instead wanted Hospira Worldwide to develop the capability to manufacture the four-strain QIV vaccine. (*Id*. at Ex. A, ¶17; Dkt. 18 at p. 3; Dkt. 19 at ¶ 6.)

In order to transition to QIV, GSK and Hospira Worldwide had to negotiate new terms and conditions because the existing Schedules (*e.g*., Schedules 3 and 5) expressly related only to the TIV vaccine. (Ex. 1 at Sch. 3; Ex. 2 (TIV Schedule 5); Dkt. 19 at ¶ 22 (the parties met in 2012 for a "'kick-off' meeting to discuss the switch to QIV.").) Those material terms, all necessary for the parties to reach a new agreement, included, among other things: (1) a new PTS for QIV; (2) the number of validation batches required for QIV; (3) which party would pay for the new bulk material necessary to manufacture the required QIV validation batches; (4) which party would pay for the supply of syringe commodities; (5) how the parties could leverage the TIV work on the new QIV project; (6) what quality standards would govern Hospira

---

[2] The final version of Schedule 5 for the TIV vaccine was agreed to on September 29, 2011. (Ex. 2.)

Worldwide's QIV manufacturing efforts; and (7) a new timetable for performance. (Dkt. 16 at Ex. A, ¶¶ 18, 19.)

In March 2012, with the TIV timetable in Schedule 3 no longer applicable, GSK proposed a new plan for product development in the hopes that the new vaccine could be submitted for regulatory filing by October 2012.[3] (Compl. at ¶ 28.) Hospira Worldwide never agreed to GSK's newly proposed timetable. Rather, it informed GSK that it was unlikely GSK's proposed new plan for QIV would be met and that, as a result, the regulatory filing was unlikely to be submitted by October 2012. (Dkt. 16 at Ex. A, ¶¶ 21-22.) Dissatisfied, GSK accused Hospira Worldwide of abandoning its purported contractual obligations and materially breaching the Agreement.

GSK's complaint contains three counts. In Count I, GSK sues both Hospira, Inc. and Hospira Worldwide for breach of contract. (Compl. at ¶¶ 34-41.) In Counts II and III, GSK asserts quasi-contractual claims against Hospira Worldwide and Hospira, Inc. for promissory estoppel and unjust enrichment/quantum meruit. (*Id*. at ¶¶ 42-58.) None of the claims should survive this motion to dismiss.

## ARGUMENT

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *Dime Group Int'l, Inc. v. Soyuz-Victan USA, LLC*, No. 07 C 4178, 2008 WL 450825, at *2 (N.D. Ill. Feb. 13, 2008) (Darrah, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not needed, "[l]egal conclusions and threadbare recitals of the elements of a cause of action do not suffice to state a claim."

---

[3] Schedule 3 included a milestone payment schedule for the TIV vaccine. (Ex. 1 at Sch. 3, p. 2.) Prior to GSK's decision to abandon TIV, the milestone dates were also "to be considered as contractual dates associated with the Technical Transfer Program activities." (*Id*. at p. 3.)

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Conclusory allegations are not entitled to be assumed as true. *Id.* And, the Court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

I.     **GSK'S COMPLAINT IS GOVERNED BY ILLINOIS LAW EXCEPT FOR GSK'S BREACH OF CONTRACT CLAIM AGAINST HOSPIRA WORLDWIDE.**

As a threshold matter, this Court must determine which law governs GSK's claims. After a diversity case is transferred under section 1404(a), the transferee court applies the substantive state law that the transferor court would have applied under the conflicts-of-laws rules of the state from which the action was transferred.[4] *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001).

Here, the Agreement between GSK and Hospira Worldwide included a New York governing law provision. (Ex. 1 at ¶ 40.) Although that provision governs the breach of contract claim GSK asserted against Hospira Worldwide (*see Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 469 (S.D.N.Y. 2001) (New York courts generally enforce choice of law provisions in contracts)), it does not govern GSK's contract claim against non-signatory Hospira, Inc. or GSK's quasi-contractual claims against Hospira, Inc. and Hospira Worldwide. *See Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A.*, No. 08 Civ. 11371 (NRB), 2012 WL 967301, at *5 (S.D.N.Y. Mar. 20, 2012) (a contract's choice of law provision does not govern claims asserted against a non-signatory); *Penrod Mgmt. Group v. Stewart's Mobile Concepts, Ltd.*, No. 07 Civ. 10649 (JGK), 2008 WL 463720 (S.D.N.Y. Feb. 19, 2008) (same); *see also Hettinger v.*

---

[4] In a transferred action like this one, this Court must apply its own interpretation of New York's choice-of-law rules in determining whether Illinois or New York law applies to GSK's claims. *See* 18 B J. Moore, et al., *Moore's Federal Practice*, ¶ 134.02 (3d ed.) (district courts owe no obedience to the decisions of the courts of appeals in other circuits).

*Kleinman*, 733 F. Supp. 2d 421, 444 (S.D.N.Y. 2010) ("extra-contractual claims are outside the scope of contractual choice-of-law provisions") (internal quotation and citations omitted).

To resolve choice-of-law questions in contract actions, New York, like a majority of other states, applies the law of the state that has the "most significant contacts" to the dispute. *Pegasus Aviation IV, Inc.*, 2012 WL 967301, at *5 (applying a "center of gravity" or "grouping of contacts" approach to the choice of law analysis); *Hettinger*, 733 F. Supp. 2d at 444 (applying most significant contacts test to determine which law governs unjust enrichment claim). To determine which state has the most significant contacts, New York courts consider such factors as the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. *Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 557-58 (S.D.N.Y. 1996). The places of contracting and performance weigh heavily in the choice-of-law determination. *See Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260-61 (2d Cir. 2002).

Here, in granting the motion to transfer, Judge Castel determined that Illinois has the more "meaningful connection to the underlying facts," and that New York lacked a "connection to the underlying facts." (Dkt. 23 at 5, 6.) Judge Castel's determination that Illinois has more significant contacts to this dispute than New York was correct. After all, as Judge Castel determined, not only is Illinois where Hospira Worldwide is headquartered, but Illinois is also from where Hospira Worldwide executives negotiated the Agreement and the Schedules for the TIV vaccine; attempted to negotiate the new terms and conditions for the QIV vaccine; administered the Agreement; communicated with GSK on at least a weekly basis; and discussed GSK's termination of the vaccine program. (Dkt. 16 at Ex. A, ¶¶ 9, 10, 11, 13-15, 17-20.)

7

Accordingly, except for the breach of contract claim asserted against Hospira Worldwide, Illinois law should govern GSK's contractual and quasi-contractual claims against Hospira, Inc. (Counts I-III) and its quasi-contractual claims against Hospira Worldwide (Counts II and III).

## II. THE COURT SHOULD DISMISS GSK'S BREACH OF CONTRACT CLAIM (COUNT I).

### A. GSK Fails To Allege The Existence Of A Valid Contract For The Manufacture Of The QIV Vaccine.

The required elements for a breach of contract claim under both Illinois and New York law are the standard ones of common law: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (affirming dismissal of breach of contract claim for failure to state a claim); *Appert v. Morgan Stanley Dean Witter, Inc.*, No. 08 CV 7130, 2010 WL 5186765, at *1 (N.D. Ill. Dec. 9, 2010) (applying New York law). A valid modification of a contract (which introduces new elements into the details of the contract) must satisfy all of the criteria essential for a valid original contract, including offer, acceptance and consideration. *Genzyme Corp. v. Discount Drugs Wisconsin, Inc.*, No. 08 C 5151, 2010 WL 744275, at *4 (N.D. Ill. Feb. 26, 2010); *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F. 3d 775, 783 (2d Cir. 2003). Neither Illinois nor New York law permits unilateral contract amendments or modifications. *Aguilera v. Freedman, Anselmo, Lindberg & Rappe, LLC*, No. 10 cv 5488, 2011 WL 2292302, at *5 n.5 (N.D. Ill. June 8, 2011); *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052(SHS), 2013 WL 1195258, at *6 (S.D.N.Y. Mar. 25, 2013).

Here, GSK fails to allege facts sufficient to show that an enforceable contract existed between the parties. Attempting to state a claim, GSK relies strictly on the admittedly abandoned agreement to manufacture TIV and completely ignores GSK's switch to the QIV vaccine, the unfinished negotiations that followed to effect GSK's vaccine change, and the

8

parties' ultimate failure to reach agreement on material terms for the manufacture of QIV. GSK's attempt to hide the ball by failing to attach the actual Agreement upon which its breach of contract claim is based, and by relying on vague and general allegations that are contradicted by its own pleadings, cannot withstand scrutiny after *Twombly* and requires that its contract claim be dismissed.

For example, even though GSK has admitted that it instructed Hospira Worldwide to stop its work on the TIV vaccine and to commence work on a new QIV vaccine (Dkt. 19 at ¶ 6; *see also* Dkt. 16 at Ex A, ¶¶ 17-18), it fails to allege that the parties ever reached agreement on a new PTS for the QIV vaccine. Because the PTS on its face was an "integral part" of the vaccine project and was "required" with respect to the "technical and qualitative details and respective responsibilities of both sites associated to goods deliveries and process put in place," the lack of a new PTS for QIV, alone, demonstrates that an essential element of GSK's cause of action is lacking and that GSK has failed to state a claim. (*See* Ex. 2.) Quite simply, without a finalized PTS for QIV, GSK and Hospira Worldwide never reached agreement on what to make or how to make it.

GSK's contract claim also fails because it does not allege that the parties ever agreed to a new schedule for QIV. Although GSK alleges that Hospira Worldwide failed to deliver an acceptable vaccine product in accordance with the timetable set forth in Schedule 3 (Compl. at ¶ 23), that schedule was waived and became invalid once GSK directed Hospira Worldwide to stop its work on the TIV vaccine and to commence work on developing the ability to manufacture the new QIV vaccine. (Dkt. 16 at Ex. A, ¶17; Dkt. 18 at p. 3; Dkt. 19 at ¶ 6.) Indeed, GSK's allegation that it proposed a new schedule in March 2012 (Compl. at ¶ 28) confirms not only that it abandoned the Schedule 3 timetable, but that the parties never reached

agreement on this additional essential term. This allegation, which undermines GSK's contract claim and which the Court is not obliged to ignore on a motion to dismiss, also requires the dismissal of GSK's claim for breach of contract. *See R.J.R. Servs.*, 895 F.2d at 281.

The failure to reach a meeting of the minds on all the essential terms of a contract makes this case similar to *Empro Manufacturing Co. v. Ball-Co Manufacturing, Inc.*, 870 F.2d 425, 424-26 (7th Cir. 1989), wherein the court held that there was no binding agreement despite substantial and lengthy negotiations. As Judge Easterbrook held in affirming the dismissal of the breach of contract claim in that case, parties can approach an agreement in stages without fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics. *Empro*, 870 F.2d at 426.

Here, while the framework document established certain parameters for the manufacture of flu vaccine generally, it left open material terms such as "the precise nature and composition of the product." (Compl. at ¶ 18.) For the TIV vaccine, those material terms were eventually supplied by the Agreement's Schedules, which were negotiated and agreed to subsequently and which were integral to the bargain between the parties. (*E.g.*, Ex. 2.) Once GSK abandoned TIV, however, the TIV-related Schedules became inapplicable and the parties needed to reach a new agreement for the manufacture of the different QIV vaccine. GSK cannot sue Hospira Worldwide (or Hospira, Inc. for that matter) for failing to produce a product (QIV) for which the parties never reached an agreement. To the contrary, as the Seventh Circuit found in *Empro*, even with agreement on the preliminaries, the failure to reach agreement on the details for the manufacture of QIV is fatal to GSK's breach of contract claim and requires its dismissal. *Empro*, 870 F.2d at 426; *see also Berco Invs., Inc. v. Earle M. Jorgensen Co.*, No. 94 C 3961,

1996 WL 388463, at *5 (N.D. Ill. July 8, 1996) (relying on *Empro* to dismiss compliant where plaintiff's own statement indicated that there was no finalized agreement between the parties).

### B. Count I Should Be Dismissed As It Relates To Hospira, Inc.

Even if Count I were to survive in some respect, the Court should nevertheless dismiss Count I as it relates to Hospira, Inc. It is axiomatic that only parties to a contract can be sued for breach. *See Swiss Reinsurance America Corp. v. Access General Agency, Inc.*, 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008) (nonparties to a contract are not liable for its breach). Here, the Agreement makes clear that the only contracting parties are GSK and Hospira Worldwide. Not only does the cover page expressly state that the Agreement is "by and between GSK and Hospira Worldwide," but the Agreement expressly defines the parties as only GSK and Hospira Worldwide. (Ex. 1 at pp. 5, 9.) Because Hospira, Inc. is not a party to the contract, GSK's claim for breach of contract against Hospira, Inc. should be dismissed.

Indeed, GSK conceded before Judge Castel that only "Hospira Worldwide, Inc. is the entity which is signatory to the Toll Manufacturing Agreement." (Dkt. 18 at 17.) Nevertheless, in its complaint, GSK alleges that Hospira, Inc. can also be sued for breach of the Agreement because (a) "on information and belief," Hospira, Inc. may be held liable "as the alter ego of Hospira Worldwide"; (b) a Hospira, Inc. employee is a signatory "to certain schedules incorporated within and forming a part of the Agreement, including Schedules 5 and 7;" and (c) Hospira, Inc. "manifested an intent" to be bound by the entire Agreement. (*Id.*; *see also* Compl. at ¶¶ 11, 39.) GSK's arguments are without merit.

*First*, GSK has failed to plead the elements necessary to pierce the corporate veil and hold Hospira, Inc. liable under some type of alter ego theory. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the

11

acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Accordingly, under both Illinois and New York law, the corporate veil may only be pierced in exceptional circumstances, where: (1) "the corporation was so controlled and manipulated that it had become a mere instrumentality of another," and (2) "recognition of a separate corporate identity would sanction a fraud or promote injustice." *RehabCare Group East, Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *2-3 (N.D. Ill. Nov. 8, 2007); *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1033-34 (2007); *see also MAG Portfolio Consult, Gmbh v. Merlin Biomed Group, LLC*, 268 F. 3d 58, 63-64 (2d Cir. 2001) (stating requirements for veil-piercing under New York law). The standards for veil-piercing are even more stringent in contract (as opposed to tort) cases. *See, e.g.*, *Tower Investors, LLC*, 371 Ill. App. 3d at 1033.

GSK comes nowhere close to satisfying these stringent requirements. Not only are "exceptional circumstances" not present here, but GSK utterly fails to allege in its complaint either that: (a) Hospira, Inc. "dominated" Hospira Worldwide such that Hospira Worldwide and Hospira, Inc. are alter egos; or (b) any such "domination" was for the express purpose of perpetrating a fraud on GSK. Moreover, as the court held in *RehabCare*, "upon information and belief" allegations in the context of a veil-piercing claim are insufficient to survive a motion to dismiss, "even under the liberal pleading requirements of FED. R. CIV. P. 8." *RehabCare*, 2007 WL 3334500, at *2.

*Second*, the purported signing of Schedules 5 and 7 does not allow GSK to maintain a breach of contract action against Hospira, Inc. Those Schedules, standing alone, do not constitute separate contracts upon which a breach of contract action can be based, as they lack several essential terms such as price and the time for performance. Moreover, and perhaps in

12

any event, GSK cannot sue Hospira, Inc. for breach of Schedules 5 and 7 because: (a) the PTS for TIV (Schedule 5) was rendered inapplicable once GSK abandoned TIV in favor of the QIV vaccine; and (b) without agreement on the terms and conditions for the manufacture of the QIV vaccine, Schedule 7's Quality Agreement is of no legal significance and cannot be the basis for an independent breach of contract claim.

*Third*, GSK's argument that Hospira, Inc. "manifested an intent" to be bound by the Agreement is not supported by Illinois law. Unlike New York, Illinois courts do not permit a non-signatory to be liable for a contract by "manifesting an intent" to be bound without also establishing either (a) that the non-signatory is the alter ego of the signatory; or (b) that the non-signatory is a named party to the agreement. *See Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange*, No. 97 C 1256, 1997 WL 767290, at *4, 5 (N.D. Ill. Dec. 3, 1997) (dismissing breach of contract claim and rejecting argument that defendant, through its act and conduct, could become bound by the contract).

For the foregoing reasons, GSK's attempt to sue Hospira, Inc. for breach of contract must be rejected. Accordingly, in the event Count I is not dismissed in its entirety, the Court should nevertheless dismiss it as it relates to Hospira, Inc.

### III.  THE COURT SHOULD DISMISS GSK'S QUASI-CONTRACTUAL CLAIMS AGAINST HOSPIRA, INC. AND HOSPIRA WORLDWIDE (COUNTS II AND III).

GSK asserts quasi-contractual claims against Hospira, Inc. and Hospira Worldwide for estoppel (Count II) and unjust enrichment/quantum meruit (Count III). The Court should dismiss those quasi-contractual claims because GSK does not allege them in the alternative to its breach of contract claim (Count I).[5] Although a plaintiff may generally plead alternative theories of

---

[5] The quantum meruit claim is also improper and should be dismissed because it seeks to recover the reasonable value of GSK's services. (Compl. at ¶ 57.) In Illinois, the proper measure of

13

recovery, quasi-contractual claims – such as promissory estoppel, unjust enrichment, and quantum meruit – cannot be maintained alongside a claim for breach of a contract that the plaintiff alleges is enforceable. *Moore's Maint. Installation, Inc. v. Hub Group Distribution Servs.*, No. 04 C 4891, 2006 WL 2631970, at *5 (N.D. Ill. Sept. 6, 2006) (dismissing unjust enrichment claim because the claim concerned a subject matter covered by the parties' contract); *Essex Real Estate Group, Ltd. v. River Works, LLC.*, No. 01 C 5285, 2002 WL 1822913, at *8-9 (N.D. Ill. Aug. 7, 2002) (dismissing quantum meruit claim); *Network Enters., Inc. v. Realty Racing, Inc.*, No. 09 Civ. 4664 (RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) ("[U]njust enrichment may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract."); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447-48 (7th Cir. 2011); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 769 (N.D. Ill. 2011) (Darrah, J.).

To plead quasi-contractual claims in the alternative to a breach of contract claim, the quasi-contractual claims "must not include allegations of a specific contract governing the parties' relationship." *Moore's Maint. & Installation, Inc.*, 2006 WL 2631970, at *5. Here, GSK's quasi-contractual claims are improper and should be dismissed because (a) they are not pled in the alternative; and (b) they expressly incorporate GSK's earlier allegations as to the existence of a contract (*see, e.g.*, Compl. at ¶¶ 42, 50). *See Vanco US, LLC v. Brink's Inc.*, No. 09 C 6416, 2010 WL 5365373, at *7 (N.D. Ill. Dec. 14, 2010) (Darrah, J.) (dismissing unjust enrichment claim not properly pled in the alternative).

---

quantum meruit recovery is the lower of: (1) the economic cost to plaintiff of providing a benefit; or (2) the economic enrichment of defendant in receiving it. *See Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 745 (7th Cir. 1990). As no vaccine product was ever sold, defendants' received no "economic enrichment" whatsoever from the vaccine project.

**CONCLUSION**

For the foregoing reasons, Hospira, Inc. and Hospira Worldwide respectfully request that the Court grant their amended motion to dismiss the complaint in its entirety.

| | |
|---|---|
| Dated: November 8, 2013 | HOSPIRA WORLDWIDE, INC. AND HOSPIRA, INC. |
| | By /s/ Christopher D. Liguori |
| | One of Their Attorneys |

Christopher D. Liguori
Timothy A. Hudson
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com