**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GLAXOSMITHKLINE BIOLOGICALS, S.A., )
 )
       Plaintiff, )  No. 13-cv-4346
 v. )
 )  Hon. John W. Darrah
HOSPIRA WORLDWIDE, INC. and )
HOSPIRA, INC., )
 )
       Defendants. )

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Christopher D. Liguori
Timothy A. Hudson
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com

*Counsel for Defendants Hospira*
*Worldwide, Inc. and Hospira, Inc.*

Defendants Hospira Worldwide, Inc. and Hospira, Inc. (collectively "defendants") respectfully submit this memorandum of law in support of their motion dismiss plaintiff GlaxoSmithKline Biologicals, S.A.'s ("GSK") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

After many months of resistance, GSK has finally acknowledged the flaws in its original complaint and, instead of risking dismissal, filed an amended complaint. The Amended Complaint, however, remains fatally flawed and should be dismissed. Under New York's election of remedies doctrine, GSK is barred from seeking relief for any of the purported failures by defendants in connection with the TIV vaccine. Once GSK elected not to terminate the contract and instead allow for continued performance, GSK lost its right to terminate the contract based on those purported breaches. This is particularly true here, where not only did GSK elect to continue the contract, but it thereafter attempted to modify the parties' Agreement to substitute a new flu vaccine (QIV) in place of the already contracted for TIV vaccine.

As for the substituted QIV vaccine, GSK also fails to state a claim for breach of contract. GSK's amended complaint allegations make clear that the terms for a QIV agreement were still being negotiated and not yet complete at the time the vaccine project was terminated. (*See* Am. Compl. at ¶¶ 4, 8, 34.) The failure to reach a final agreement for the manufacture of QIV requires the dismissal of GSK's QIV-based breach of contract claim as a matter of law.

Finally, GSK's quasi-contractual claims for promissory estoppel (Count II) and unjust enrichment/quantum meruit (Count III) are deficient as a matter of law. It is well-settled that quasi-contractual claims for promissory estoppel and unjust enrichment/quantum meruit cannot be maintained (even in the alternative) where there is a specific contract that governs the parties'

relationship. Because there is no dispute that a valid contract existed for TIV, the quasi-contractual claims, which fail to differentiate between TIV and QIV, must be dismissed.

## BACKGROUND

Hospira, Inc., headquartered in Lake Forest, Illinois, is a worldwide provider of injectable drugs, infusion technologies and other pharmaceutical products that help improve the productivity, safety and efficacy of patient care. (Am. Compl. at ¶ 14; Dkt. 16 at Ex. A (Tran Decl.), ¶ 4.)[1] Hospira, Inc.'s business includes the One 2 One Contract Manufacturing business ("One 2 One business"), which is conducted through Hospira, Inc.'s wholly-owned subsidiary, Hospira Worldwide. (Am. Compl. at ¶ 13; Dkt. 16 at Ex. A, ¶ 5.) The One 2 One business provides global contract manufacturing services to produce injectable products for some of the world's major proprietary pharmaceutical and biotechnology companies. (Dkt. 16 at Ex. A, ¶ 6.)

On December 31, 2010, Hospira Worldwide and Belgium-based GSK entered into a Toll Manufacturing Agreement ("Agreement") for the manufacture of flu vaccine in the United States. (Am. Compl. at ¶ 18 and Ex. A.) The parties' agreement consisted of several documents, including a general framework for the manufacture of a yet-to-be specified vaccine (attached to the Amended Complaint at Exhibit A), several schedules (attached to the Amended Complaint at Exhibits A and B), and a Quality Agreement (attached to the Amended Complaint at Exhibit C). (Am. Compl. at Ex. A, § 33.1 (defining Entire Agreement as including the "Agreement, its

---

[1] When addressing a motion to dismiss, courts may consider documents outside the pleadings "if they are referred to in the plaintiff's complaint and are central to his claim." *Wallis v. Card Servs. Int'l Inc.*, No. 10 C 7250, 2012 WL 1866374, at *7 (N.D. Ill. May 22, 2012) (Darrah, J.); *see also Thompson v. Ill. Dep't Prof. Reg.*, 300 F.3d 750, 753-54 (7th Cir. 2002). A court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (court make take judicial notice of matters of public record, including facts not in dispute); *Henson v. CSC Credit Servs*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that the district court "properly considered the public court documents [from an earlier Indiana state court case] in deciding the defendants' motion to dismiss"). The Agreement, including its Schedules, and the pleadings and supporting materials filed in connection with the motion to transfer, easily meet these standards and the Court may consider them in connection with the instant motion.

attached Schedules and the Quality Agreement"); Am Compl. at ¶ 18 (schedules "formed a part of the overall Agreement between the parties.").) The Schedules were a necessary part of the overall agreement because they established essential contract terms such as the type of flu vaccine product that Hospira Worldwide would manufacture (Schedule 5), the technical aspects and methods for manufacturing TIV (Schedule 5), the delivery and payment schedules (Schedule 3), and the overall quality standards (Schedule 7).

For example, GSK alleges that Section 1.47 of the general framework document defined Vaccine Product generically as the "GSK influenza vaccine product which includes the Bulk, filled and finished by Hospira." (Am. Compl. at ¶¶ 5, 23.) Schedule 5, on the other hand, which expressly incorporated a separate document entitled Process Transfer Specification ("PTS"), established the specific type of flu vaccine that Hospira Worldwide would make: a three-strain flu vaccine called "Trivalent" or "TIV." The parties expressly acknowledged that the PTS was an "*integral*" part of their agreement and was "*required*."[2] (Am. Compl. at Ex. B., §§ 1, 7.) It was *integral* (*i.e.*, an essential part to the completeness of the overall agreement) and *required* because, among other things, not only did it identify the type of vaccine Hospira Worldwide would make (TIV), but it described in detail the "technical aspects and methods associated with the reception, pooling, syringe filling, stoppering and visual inspection of the vaccine product." (Am. Compl. at Ex. B.) The PTS that GSK attached to its Amended Complaint (Ex. B) applied only to the TIV vaccine. (Ex. B. at §§ 1, 7.)

Schedule 3 was also of particular significance to the overall agreement between the parties. The general framework document omitted certain material terms, including the actual equipment necessary for the manufacture of the flu vaccine, a payment schedule, and a time for performance. Rather, those essential terms were established through Schedule 3. Among other

---

[2] The final version of Schedule 5 for the TIV vaccine was agreed to on September 29, 2011. (Ex. B.)

things, Schedule 3 established a series of milestone payments in 2010 and 2011 and contemplated that the preparation and review of a regulatory filing for TIV would be completed by the end of 2011. (Am. Compl. at ¶ 25 and Schedule 3.)

With the framework of an agreement in place for TIV, the parties undertook to perform their respective contractual obligations. GSK transferred to Hospira Worldwide the technology, components, and Bulk material needed to manufacture TIV. (Am. Compl. at ¶¶ 18, 20-22, 24.) Hospira Worldwide purchased the necessary equipment for the manufacture of TIV at Hospira, Inc.'s plant in McPherson, Kansas and manufactured the engineering, media fill and validation batches for TIV.

In or around October 2011, however, while Hospira Worldwide was in the midst of performing its contractual obligations, GSK informed Hospira Worldwide that GSK would delay its regulatory submission of TIV to the U.S. Food and Drug Administration ("FDA") until 2012. (Dkt. 16 at Ex. A (Tran Decl.), ¶ 16.) According to the Amended Complaint, by October 2011 GSK was of the view that Hospira Worldwide had failed to perform several of its obligations under the Agreement and was "not considered to be on track to achieve file submission in December 2011." (Am. Compl. at ¶ 30.) However, GSK chose not to terminate the Agreement. Rather, GSK elected to continue performance but sought to substitute a new and different type of flu vaccine for the originally-contracted for vaccine. GSK informed Hospira Worldwide in November 2011 that GSK had decided to abandon the TIV project altogether and, according to the Amended Complaint, "agreed to work with Hospira [Worldwide] to launch a quadrivalent ('QIV') version of the [vaccine] product."[3] (Am Compl. at ¶ 4; *see also* Dkt. 16 at Ex. A, ¶ 17; Dkt. 18 at p. 3; Dkt. 19 (Chevallier Decl.) at ¶¶ 6, 22.)

---

[3] As the prefix suggests, a "*quadr*ivalent" flu vaccine targets four strains of flu instead of three strains of flu that a "*tri*valent" vaccine targets.

4

In order to transition to QIV, GSK and Hospira Worldwide had to negotiate new terms and conditions because the existing Schedules (*e.g.*, Schedules 3 and 5) expressly related only to the TIV vaccine. (Am. Compl. at ¶ 34, Ex. A at Sch. 3 and Ex. B (TIV Schedule 5); Dkt. 19 at ¶ 22.) Those material terms, all necessary for the parties to reach a new agreement, included, among other things: (1) a new PTS for QIV; (2) the number of validation batches required for QIV; (3) which party would pay for the new bulk material necessary to manufacture the required QIV validation batches; (4) which party would pay for the supply of syringe commodities; (5) how the parties could leverage the TIV work on the new QIV project; (6) what quality standards would govern Hospira Worldwide's QIV manufacturing efforts; and (7) a new timetable for performance. (Dkt. 16 at Ex. A, ¶¶ 18, 19.)

Continuing with their transition efforts, in February 2012 the parties met for a "'kick-off' meeting to discuss the switch to QIV." (Dkt. 19 (Chevallier Decl.) at ¶ 22.) In March 2012, GSK circulated a "proposed plan" for product development in the "hopes" that the new vaccine could be submitted for regulatory filing by October 2012. (Am. Compl. at ¶ 34.) Just days later, while the parties were still negotiating the terms of a new PTS for QIV, and after Hospira Worldwide had informed GSK that it was unlikely QIV would be ready for an October 2012 regulatory submission, GSK pulled the plug on the entire vaccine project and accused Hospira Worldwide of abandoning its purported contractual obligations and materially breaching the Agreement. (Dkt. 16 at Ex. A, ¶¶ 21-22; Am. Compl. at ¶ 34.) This lawsuit followed.

## ARGUMENT

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must describe the claim in sufficient detail to give the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *Dime Group Int'l, Inc. v. Soyuz-Victan USA, LLC*, No. 07 C 4178, 2008 WL 450825, at *2 (N.D. Ill. Feb. 13, 2008) (Darrah, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although detailed factual allegations are not needed, "[l]egal conclusions and threadbare recitals of the elements of a cause of action do not suffice to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Conclusory allegations are not entitled to be assumed as true. *Id.* Nor is the Court "obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

## I. NEW YORK LAW GOVERNS GSK'S BREACH OF CONTRACT CLAIM AND ILLINOIS LAW GOVERNS THE REMAINDER OF GSK'S CLAIMS.

As a threshold matter, this Court must determine which law governs GSK's claims. After a diversity case is transferred under section 1404(a), the transferee court applies the substantive state law that the transferor court would have applied under the conflicts-of-laws rules of the state from which the action was transferred. *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001). New York, like a majority of other states, applies the law of the state that has the "most significant contacts" to the dispute. *Pegasus Aviation IV, Inc. v. Aerolineas Austral Chile, S.A.*, No. 08 Civ. 11371 (NRB), 2012 WL 967301, at *5 (applying a "center of gravity" or "grouping of contacts" approach to the choice of law analysis); *Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 444 (S.D.N.Y. 2010) (applying most significant contacts test to determine which law governs unjust enrichment claim).

Here, the Agreement between GSK and Hospira Worldwide included a New York governing law provision. (Am. Compl. at Ex. A, ¶ 40.) The Agreement's choice-of-law provision thus governs GSK's breach of contract claim. *See Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 469 (S.D.N.Y. 2001) (New York courts generally enforce choice of law provisions in contracts). However, the reach of the Agreement's choice-of-law provision stops there. New York law has no application to: (a) a determination of whether non-signatory Hospira, Inc. is bound by the Agreement; and (b) GSK's quasi-contractual claims. *See Pegasus Aviation IV, Inc.*, 2012 WL 967301, at *5 (a contract's choice of law provision does not govern claims asserted against a non-signatory (such as Hospira, Inc.)); *see also* Hettinger, 733 F. Supp. 2d at 444 ("extra-contractual claims [such as those GSK asserts in Count II and III] are outside the scope of contractual choice-of-law provisions") (internal quotation and citations omitted). Rather, Illinois law governs those issues and claims because, as Judge Castel has already determined (Dkt. 23 (Castel Order) at 4, 5, 6), Illinois, not New York, has the "more meaningful connection to the underlying facts." *Pegasus Aviation IV, Inc.*, 2012 WL 967301, at *5 (applying a "center of gravity" or "grouping of contacts" approach to the choice of law analysis); *Hettinger*, 733 F. Supp. 2d at 444 (applying most significant contacts test to determine which law governs unjust enrichment claim).

## II. THE COURT SHOULD DISMISS GSK'S BREACH OF CONTRACT CLAIM (COUNT I).

### A. The Election Of Remedies Doctrine, Coupled With GSK's Attempted Contract Modification, Bars GSK's TIV-Based Contract Claim.

The election of remedies doctrine, coupled with GSK's attempted contract modification, bars GSK's TIV-based breach of contract claim. New York's election of remedies doctrine requires that the non-breaching party elect at the time of the alleged breach between terminating the contract and continuing performance. "Once a party elects to continue the contract, [it] can

*never* thereafter elect to terminate the contract based on that breach, although [it] retains the option of terminating the contract based on other, subsequent, breaches." *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011-12 (S.D.N.Y. 1995) (citations omitted; emphasis added); *see also Apex Fuel Equip. Corp. v. Lee*, 419 F. 2d 556, 561-63 (2d Cir. 1969) (under New York law, "[w]here a contract is broken in the course of performance, the injured party has a choice . . . of continuing the contract or of refusing to go on . . . . If the injured party chooses to go on, [it] loses [its] right to terminate the contract because of the default."); *Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D. 2d 932, 686 N.Y.S. 2d 911, 913 (N.Y. App. Div. 1999) (although a party can either "treat the entire contract as broken and sue immediately for the breach or reject the proposed breach and continue to treat the contract as valid," the party "must, however, make an election and cannot at the same time treat the contract as broken and subsisting. One course of action excludes the other.") In other words, "once the non-breaching party elects to continue the contract, he may not at a later time renounce his election and seek to terminate based on the prior breach." *Macfarlane & Assocs., Inc. v. Noxell Corp.*, No. 93 Civ. 5192 (PKL), 1994 WL 369324, at *4 (S.D.N.Y. July 13, 1994) (citation omitted).

Here, GSK alleges that the defendants failed to satisfy their contractual obligations in several material respects during the last several months of 2011.[4] (Am. Compl. at ¶¶ 30-34, 43.) GSK also alleges that it determined as early as October 2011 that the defendants were not "on track to achieve [regulatory] file submission in December 2011." (*Id.* at ¶ 30.) GSK did not, however, terminate the Agreement in the latter months of 2011 or at the end of 2011, when defendants allegedly failed to satisfy Schedule 3's purported deadline for regulatory submission.

---

[4] As a non-signatory to the Agreement, Hospira, Inc. disputes that it had any contractual obligations or that it could have breached the Agreement. (*Infra.*)

To the contrary, GSK elected to keep the Agreement in place and continue working with defendants. (Am. Compl. at ¶¶ 4, 8, 34.).

GSK's election to continue, rather than end the contract, moots the question of whether defendants breached the Agreement based on the purported TIV-related failures GSK identifies in its Amended Complaint. *See Royal Dispatch Servs., Inc. v. UBS Fin'l Servs., Inc.*, No 12 CV 2032 (JG) (RLM), 2012 WL 3113291 at *3 (E.D.N.Y. July 31, 2012) (granting motion to dismiss because "[o]nce a party has elected a remedy for a particular breach, his choice is binding with respect to that breach and cannot be changed."); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 387-92 (S.D.N.Y. 1999) (baseball's election to continue its contract with ESPN barred it from terminating the contract based on ESPN's purported breach in 1998) (relying on, in part, 5 Williston, *Contracts* § 684 (3d ed. 1961) ("[T]he law simply does not . . . permit a party to exercise two alternative or inconsistent rights or remedies."); *Macfarlane*, 1994 WL 369324, at *4-5 (granting motion to dismiss where the plaintiff elected to continue the contract instead of terminating it). Having instructed defendants to stop working on the TIV vaccine in favor of something else, GSK lost its right to sue defendants based on the TIV-related failures GSK alleges in its Amended Complaint. Rather, the law requires that GSK abide by the consequences of its decision to continue performance and "work with Hospira to launch" the new four-strain QIV flu vaccine with an October 2012 target date for regulatory submission. (Am. Compl. at ¶¶ 4, 34; *see also* Dkt. 19 at ¶ 6; Dkt. 16 at Ex A, ¶¶ 17-18.)

To find otherwise would result in the anomaly of allowing GSK to seek damages for the failure to deliver TIV that it ultimately instructed the defendants not to make. As the court observed in *ESPN*, in addition to the "obvious uncertainty and concomitant unfairness" that would result if GSK were permitted "to exercise two alternative or inconsistent rights or

remedies," "there is a more fundamental problem when a party terminates after continuing the contract for a period of time: the party's legal justification for termination has disappeared." *ESPN*, 76 F. Supp. 2d at 391-92.

Finally, GSK's attempt to plead around the election of remedies doctrine by citing the Agreement's Waiver Clause is unavailing. (Am. Compl. at ¶ 8). GSK alleges that it explicitly "reserved any rights by virtue of Section 29 of the Agreement." (*Id.*) But the no-waiver clause has no application to the doctrine of election. *ESPN*, 76 F. Supp. 2d at 390 (citing *Bigda*, 849 F. Supp. at 901 n.2 ("[T]he decision of a non-breaching party to continue to perform is not a 'waiver' of that party's right to terminate the contract, but an election, and so the [no-waiver] clause is irrelevant to this dispute.")). In rejecting a similar argument, the court in *ESPN* observed that waiver and election are "distinct principles that do not overlap." *ESPN*, 76 F. Supp. 2d at 390. Unlike waiver, the court in *ESPN* held,

> [Election] demands that the party exercise its rightful remedies in a consistent and binding manner. The party must either terminate or continue, but not both. Nor may the party choose one avenue and then change its mind.

*Id.* Thus, the court concluded, the standard no-waiver clause, as GSK alleges is present here, "does not immunize or excuse parties from the requirements and consequences of election." *Id.* (citing, *inter alia*, 5 Williston, Contracts § 684 (3d ed. 1961) (even if electing party "expressly states that [it] intends to reserve a right, [it] will nevertheless lose [that right] if [it] takes an inconsistent course.")); *see also Sofi Classic S.A. DE C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 239 (S.D.N.Y. 2006) (finding the above *ESPN* analysis "compelling" in rejecting plaintiff's "no waiver" argument and granting defendant's motion to dismiss with prejudice).

**B.      GSK's QIV-Based Breach Of Contract Claim Should Be Dismissed For Failure To Allege A Valid Modification Of The Parties' Original Agreement.**

GSK's breach of contract claim based on QIV should be dismissed because GSK fails to allege a valid and enforceable modification of the parties' original Agreement.[5]  As set forth above, the parties originally agreed to manufacture TIV.  (Am. Compl. at ¶ 4 and Ex. B at §§ 1, 7 (expressly stating that the PTS is applicable to, and concerns only, the TIV flu vaccine).)  Thus, in order for GSK to proceed with its breach of contract claim for failure to deliver QIV, GSK must sufficiently allege that the parties agreed on the material terms to do so.  *See, e.g., Hirsch v. Arthur Anderson & Co.*, 72 F. 3d 1085, 1095 (2d Cir. 1995) (dismissing plaintiff's "attenuated allegations" that were "contradicted [] by more specific allegations").

A valid modification of a contract (which introduces new elements into the details of the contract and cancels others (such as the switch from TIV to QIV)) must satisfy all of the criteria essential for a valid original contract, including offer, acceptance and consideration.  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F. 3d 775, 783 (2d Cir. 2003); *see also Baraliu v. Vinya Capital, L.P.*, No. 07 Civ. 4626 (MHD), 2009 WL 959578, at *4 (dismissing contract claim based on original contract that had since been modified because "the modification establishes a new agreement between the parties which supplants the affected provisions of the underlying agreement").  Under New York law, unilateral contract amendments or modifications are not permitted.  *AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052 (SHS), 2013 WL 1195258, at *6 (S.D.N.Y. Mar. 25, 2013).

Here, GSK's QIV-based contract claim fails as a matter of law because GSK has not alleged that there was a valid modification of the parties' original Agreement.  Rather, the

---

[5] According to GSK's Rules 26(a)(1) disclosures, its QIV-related damages amount to approximately seven percent of the total damages it seeks to recover through this lawsuit.  (GSK's Rule 26(a)(1) Disc's. at p. 5.)

allegations demonstrate that the parties never reached agreement on the essential terms necessary for the QIV change. For example, GSK does not allege that the parties reached agreement on a new PTS for the QIV vaccine. Nor does it attach an agreed on PTS for QIV, as it did for TIV. (Am. Compl. at Ex. B.) The lack of a new PTS for QIV, which the parties expressly stated was a "required" contract document and an "integral" part of their overall agreement, alone, dooms GSK's QIV-related breach of contract claim. Quite simply, without the "integral" and "required" PTS for QIV, there was no agreement between the parties with respect to "the technical and qualitative details and respective responsibilities" of both parties regarding the goods to be delivered and the processes by which they would be made.

The QIV-related claim also fails because GSK fails to allege that the parties ever agreed on a schedule for performance. Indeed, the Amended Complaint allegations make clear that the opposite is true: that the parties never agreed on a schedule. As GSK itself acknowledges, after the 2011 regulatory submission deadline for TIV fell by the wayside, it progressed no further schedule-wise other than to "propose" a new schedule for QIV in March 2012. (*See* Am. Compl. at ¶ 34; *see also* Dkt. 16 at Ex. A, ¶ 22; Dkt. 19 at ¶¶ 6, 22.)

The Amended Complaint demonstrates that there was no meeting of the minds on these and other essential terms necessary to effectuate a contract modification.[6] Accordingly, GSK's claim for breach of contract based on QIV should be dismissed as a matter of law. *See Empro Mfg. Co. v. Ball-Co Mfg., Inc.*, 870 F.2d 425, 424-26 (7th Cir. 1989) (affirming the dismissal of the breach of contract claim and holding that parties can approach an agreement in stages without fear that by reaching a preliminary understanding they have bargained away their

---

[6] Other contract terms not agreed to include: (1) the number of validation batches required for QIV; (2) which party would pay for the new bulk material necessary to manufacture the required QIV validation batches; (3) which party would pay for the supply of syringe commodities; (4) how the parties could leverage the TIV work on the new QIV project; and (5) what quality standards would govern Hospira Worldwide's QIV manufacturing efforts. (Dkt. 16 at Ex. A, ¶¶ 18, 19.)

privilege to disagree on the specifics); *see also Berco Invs., Inc. v. Earle M. Jorgensen Co.*, No. 94 C 3961, 1996 WL 388463, at *5 (N.D. Ill. July 8, 1996) (relying on *Empro* to dismiss compliant where plaintiff's own statement indicated that there was no finalized agreement between the parties).

## C.     Count I Should Be Dismissed As It Relates To Hospira, Inc.

Even if Count I were to survive in some respect, the Court should nevertheless dismiss Count I as it relates to Hospira, Inc.  It is axiomatic that only parties to a contract can be sued for breach.  *See Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008) (nonparties to a contract are not liable for its breach).  Because Hospira, Inc. is not a party to the contract, GSK's claim for breach of contract against Hospira, Inc. should be dismissed. (*See* Am. Compl. at Ex. A at pp. 5, 9; Dkt. 18 at 17 (conceding that "Hospira Worldwide, Inc. is the entity which is signatory to the Toll Manufacturing Agreement").)

In its Amended Complaint, GSK attempts to plead around this obvious flaw by alleging that because a Hospira, Inc. employee co-signed Schedules 5 and 7, Hospira, Inc. "manifested an intent" to be bound by the entire Agreement.  (Am. Compl. at ¶ 14.)  Unlike under New York law, however, courts in Illinois do not permit a non-signatory to be liable for a contract by "manifesting an intent" to be bound without also establishing either (a) that the non-signatory is a named party to the agreement; or (b) that the non-signatory is the alter ego of the signatory. *See Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange*, No. 97 C 1256, 1997 WL 767290, at *4, 5 (N.D. Ill. Dec. 3, 1997) (dismissing breach of contract claim and rejecting argument that defendant, through its act and conduct, could become bound by the contract).  Because GSK has

failed to make allegations sufficient to satisfy either requirement,[7] the Court should dismiss Count I as it relates to Hospira, Inc.

## III. THE COURT SHOULD DISMISS GSK'S QUASI-CONTRACTUAL CLAIMS AGAINST HOSPIRA, INC. AND HOSPIRA WORLDWIDE (COUNTS II AND III).

The Court should dismiss GSK's quasi-contractual claims against Hospira, Inc. and Hospira Worldwide for estoppel (Count II) and unjust enrichment/quantum meruit (Count III). Such claims cannot be maintained as a matter of law "where there is a specific contract which governs the relationship of the parties."[8] *See Discom Int'l, Inc. v. R.G. Ray Corp.*, No. 10 C 2494, 2010 WL 4705178, *5 (N.D. Ill. Nov. 10, 2010) (applying Illinois law and dismissing claims for unjust enrichment/quantum meruit and promissory estoppel where the existence of an express contract is not in dispute); *Song v. PIL, LLC*, 640 F. Supp.2d 1011, 1016-17 (N.D. Ill. 2009) (same); *see also Fulcrum Fin'l Advisors, Ltd. v. BCI Aircraft Leasing, Inc.*, 354 F. Supp. 2d 817, 827 (N.D. Ill. 2005) (applying New York law and stating that a plaintiff may pursue both breach of contract and quantum meruit claims only when there is a "bona fide dispute over whether a contract exists or whether an existing contract covers the dispute"). This is the case even when the quasi-contractual claims have been pled in the alternative to a claim for breach of contract.

Here, defendants do not contest the existence of a valid and enforceable contract for the manufacture of TIV. Rather, based on GSK's election of remedies, and its subsequent attempted

---

[7] In its Amended Complaint, GSK has dropped the allegation that "on information and belief" Hospira, Inc. may be held liable "as the alter ego of Hospira Worldwide." (*Compare* Compl. at ¶ 11 *with* Am. Compl. at ¶ 14.)

[8] The quantum meruit claim should also be dismissed because it seeks to recover the reasonable value of GSK's services. (Am. Compl. at ¶ 62.) In Illinois, however, the proper measure of quantum meruit recovery is the lower of: (1) the economic cost to plaintiff of providing a benefit; or (2) the economic enrichment of defendant in receiving it. *See Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 745 (7th Cir. 1990).

modification, GSK is precluded from pursuing its breach of contract claims. Because there is no dispute that a valid contract governed the production and manufacture of the TIV vaccine, and because the quasi-contractual claims fail to differentiate between the two distinct vaccine projects, Counts II and III should be dismissed in their entirety.

## CONCLUSION

For the foregoing reasons, Hospira, Inc. and Hospira Worldwide respectfully request that the Court grant their motion to dismiss the Amended Complaint in its entirety.


Dated:  December 23, 2013                                HOSPIRA WORLDWIDE, INC. AND
                                                         HOSPIRA, INC.


                                                  By___/s/ Christopher D. Liguori_____
                                                         One of Their Attorneys


Christopher D. Liguori
Timothy A. Hudson
Katherine M. O'Brien
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street, 7th Floor
Chicago, IL  60604
Telephone:  (312) 762-9450
cliguori@tdrlawfirm.com
thudson@tdrlawfirm.com
kobrien@tdrlawfirm.com