UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS, S.A., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-cv-4346 |
| HOSPIRA WORLDWIDE, INC. and HOSPIRA, INC., | ) Judge John W. Darrah |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff GlaxoSmithKline ("GSK") filed an Amended Complaint against Defendants Hospira Worldwide, Inc. and Hospira, Inc. (collectively, "Hospira"), alleging three causes of action: (I) breach of contract; (II) promissory estoppel; and (III) *quantum meruit* and unjust enrichment. Hospira moves to dismiss all counts, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons provided below, this Motion is denied.

**BACKGROUND**

GSK is a healthcare company that researches and develops vaccines for worldwide distribution, with its principal place of business in Belgium. (Am. Compl. ¶ 12.) Hospira Worldwide, Inc. and Hospira, Inc. are corporations that provide injectable drugs, infusion technologies, and other pharmaceutical products, with their principal place of business in Lake Forest, Illinois. (*Id.* ¶¶ 13-14.) GSK and Hospira entered into an agreement ("the Agreement"), dated December 13, 2010, providing Hospira would produce an influenza vaccine product for distribution throughout the United States. (*Id.* ¶ 18.)

The Agreement comprised various schedules, describing the product, work to be performed, price and payment terms, and duration, all of which were necessary to the overall

Agreement. (*Id*. ¶¶ 18-19.) Schedules 5 and 7 were individually executed by Hospira, Inc., a provider of injectable drugs and other pharmaceutical products, based in Lake Forest Illinois. (*Id*. ¶ 14.) The remainder of the Agreement was executed by Hospira Worldwide, Inc., a wholly-owned subsidiary of Hospira, Inc. (*Id*. ¶ 13.) Pursuant to the Agreement, GSK supplied the raw materials to Hospira, which would, in turn, produce batches of Vaccine Product in compliance with the Agreement and "otherwise acceptable to GSK at its sole discretion." (*Id*. ¶¶ 20-21.) Vaccine Product "means the GSK influenza vaccine product which includes the Bulk [*i.e*, raw materials] filled and finished by Hospira." (*Id*. ¶ 23.)

The parties initially contemplated a Trivalent influenza vaccine ("TIV"). (*Id*. ¶ 4.) However, after Hospira failed to produce an acceptable validation batch, GSK agreed to work with Hospira to produce a Quadrivalent influenza vaccine ("QIV"). (*Id*.) The definition of Vaccine Product draws no distinction between the two versions, and allows for the version to change over the life of the Agreement. (*Id*. ¶ 5.) All production was to be in accordance with current good manufacturing practices ("cGMP"). (*Id*. ¶ 2.) The parties agreed to a timetable that required Hospira to produce all Validation Batches for regulatory filing in 2011. (*Id*. ¶ 25.)

Hospira failed to maintain its production facilities in accordance with cGMP and produced Validation Batches that generally failed to satisfy the quality requirements of the Agreement. (*Id*. ¶¶ 28, 30.) As a result, Hospira failed to submit to GSK a product appropriate for regulatory filing. (*Id*. ¶ 29.) On at least three dates, Hospira acknowledged that its batches were "invalid" and "unacceptable for GSK." (*Id*. ¶ 31.) GSK consistently notified Hospira that Hospira was in breach of the Agreement. (*Id*. ¶¶ 32-33.)

In addition to notifying Hospira of its breaches, GSK worked with Hospira to achieve an acceptable vaccine. (*Id*. ¶ 34.) GSK proposed a plan to develop a vaccine for regulatory filing by October 2012. (*Id*.) The new proposal called for development of a quadrivalent influenza vaccine ("QIV"). (*Id*. ¶ 4.) Hospira again failed to produce a Validation Batch in accordance with the Agreement. (*Id*. ¶ 35.)

On March 22, 2012, Hospira informed GSK that Hospira intended to terminate the Agreement more than three years before the scheduled term end of December 2015, and confirmed its decision to terminate in an email that same day. (*Id*. ¶ 36.) On March 30, 2012, Hospira again confirmed its decision to terminate in a conversation with GSK. (*Id*.) On April 2, 2012, GSK informed Hospira that a termination would constitute material breach of the Agreement, and Hospira responded that Hospira considered the agreement terminated. (*Id.* ¶¶ 37-38.) Hospira has failed to perform and materially breached its obligations under the Agreement as Hospira: (a) failed to produce Vaccine Batches and Product in compliance with the Agreements quality requirements; (b) failed to produce Vaccine Batches and Product in accordance with cGMP; (c) failed to produce Vaccine Batches and Product appropriate for regulatory submission by the end of 2011; (d) failed to produce Vaccine Batches and Product otherwise acceptable to GSK; (e) failed to maintain its Kansas facility; (f) failed to cure or remedy its breaches; and (g) unilaterally terminated the Agreement on March 22, 2012. (*Id*. ¶ 43.) The breach resulted in GSK sustaining damages in excess of $25 million. (*Id*. ¶ 45.)

GSK brought an action in the Southern District of New York, alleging claims for breach of contract, promissory estoppel, and *quantum meruit* and unjust enrichment.[1] Hospira then successfully moved to transfer the case to the Northern District of Illinois. GSK filed the Amended Complaint on November 27, 2013. Hospira now moves to dismiss the Amended Complaint.

## LEGAL STANDARD

When considering motions brought pursuant to Rule 12(b)(6), all well-pleaded allegations within the complaint are read in the light most favorable to the plaintiff and presumed true. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). A proper claim requires only short and plain statements of jurisdiction and entitlement to relief, as well as a demand for the relief sought. Fed. R. Civ. P. 8(a). However, the pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A defendant may move to dismiss, pursuant to Rule 12(b)(6), if the plaintiff has failed to state a claim upon which relief can be granted. Withstanding such a motion requires alleging enough facts to support a claim that is "plausible on its face." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)). Facial plausibility exists when the

---

[1] *GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc.*, No. 13 Civ. 1395(PKC), 2013 WL 2244315 (S.D.N.Y. 2013).

court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. The court must consider context, but if it still must speculate, plausibility is lacking. *Id*.

In most cases, a motion to dismiss should be decided on the complaint alone. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). Yet, a document "that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. Pro. 10(c). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (citation omitted).

## ANALYSIS

*Choice-of-Law*

The parties agree that New York law governs GSK's breach of contract claim, and New York's choice-of-law rules determine under which state's laws the remaining claims should be analyzed.[2] However, Hospira argues that New York's choice-of-law rules require all quasi-contractual claims be resolved under Illinois law. New York applies a "center of gravity" test that weighs significant contacts, including the locations of contracting, negotiations, and the domicile of the parties. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997) (citations omitted). It is apparent that the most significant contacts occurred in

---

[2] When a case is transferred from another district, the receiving court applies the choice-of-law rules the transferring district would apply. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003).

Illinois.[3] The negotiation and execution of the Agreement occurred in Illinois, where Hospira is domiciled. Accordingly, Illinois law controls the quasi-contract claims of promissory estoppel (Count II) and *quantum meruit* (Count III) not subject to the choice-of-law provision within the Agreement.

*Hospira, Inc.*

Hospira argues that Count I of the Amended Complaint must be dismissed as to Hospira, Inc. because "only parties to a contract can be sued for breach. (Def. Mot. at 13.) However, GSK alleges that Hospira, Inc. was, in fact, the signatory of Schedules 5 and 7 of the Agreement. (Am. Compl. ¶ 14.) It is undisputed that the Agreement must be read in conjunction with the various appended documents and schedules, including the Product Transfer Specification ("PTS").[4] Therefore, because the allegations in the Amended Complaint are presumed true and read in the light most favorable to GSK, Hospira's Motion to Dismiss Count I is denied with respect to Hospira, Inc.

*Breach of Contract With Respect to a TIV*

The parties agree that the Agreement constituted a valid contract between GSK and Hospira with respect to the TIV. GSK alleges that the Agreement was breached by Hospira, as set out above, and that GSK notified Hospira of Hospira's breaches on at least five occasions.[5]

---

[3] The entire performance of the Agreement was intended to, and in large part did, take place in Kansas, yet neither party argues that Kansas law should apply. Still, there are sufficient contacts within Illinois to deem it the "center of gravity."

[4] See, e.g., (Am Compl. ¶ 18) and (Def. Mot. at 3).

[5] GSK alleges it "informed" Hospira of Hospira's breach on September 7, 2011; "distributed to Hospira an audit report" detailing Hospira's breach in October of 2011; and provided notice to Hospira in written memoranda in November 2011, December 2011, and February 2012.

Hospira argues that these breaches are foreclosed by New York's election of remedies doctrine, which provides in breach of contract claims that the non-breaching party "can elect to terminate the contract and recover liquidated damages or [it] can continue the contract and recover damages solely for the breach." *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 387 (S.D.N.Y 1999) (quoting *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011-12 (S.D.N.Y. 1995) (*Bigda II*)) (alteration in original). That is, once a party has elected to continue a contract despite a breach, it may never terminate based on that breach. *Id.* at 387-388.

Notwithstanding the clear language "terminate the contract and recover *liquidated* damages" (emphasis added), Hospira argues that GSK's failure to terminate the Agreement, and eventually to attempt to work with Hospira to produce a QIV, precludes GSK's ability to sue for damages of any kind related to the TIV.

In support of this argument, Hospira relies in part on *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658 (S.D.N.Y. 1996).[6] However, the holding in *Alesayi* is directly contrary to the well-established doctrine that "[d]espite an election to continue a

---

[6] In that case, Alesayi had breached its manufacturing and distribution agreements with Canada Dry by dealing with a third company. Rather than terminate the contract, Canada Dry elected to enter a modified agreement with Alesayi, which Alesayi subsequently also breached. The district court held that, by entering into the modified agreement, Canada Dry had forgiven all of Alesayi's prior breaches and could collect only damages related to breach of the modified agreement. In its assessment that Canada Dry had forgiven all breaches prior to the modified agreement and, therefore, could not recover even damages, the district court cited *Bigda v. Fischbach Corp.*, 849 F. Supp. 895, 901 (S.D.N.Y. 1994) (*Bigda I*). Yet, *Bigda I* was a summary judgment decision regarding a non-breaching party seeking termination and liquidated damages after continued performance. In *Bigda II* the district court held that the election of remedies doctrine rendered continued performance to be a bar to termination and liquidated damages, expressly reserving the non-breaching party's right to "recover damages solely for the breach." *Bigda II*, 898 F. Supp. at 1011.

7

contract, the non-breaching party may later sue for damages due to the breach." *Marathon Enters., Inc. v. Schroter GMBH & Co.*, No. 01 Civ. 0595(DC), 2003 WL 355238, at *6 (S.D.N.Y. Jun. 23, 2004) (citing *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 736 (S.D.N.Y. 2000)). Further, New York courts have consistently held that a party that continues performance despite breach can lose its right to sue *if* it does not notify the breaching party at the time of the breach. *See, e.g., Hallinan v. Republic Bank & Trust Co.*, 519 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) ("If a party chooses to continue performance, it must give notice of breach to the other side, or it waives its rights to sue the breaching party."); *Purchase Partners, LLC v. CarverFed. Sav. Bank*, 914 F. Supp. 2d (S.D.N.Y. 2012) (holding non-breaching party's notice of breach preserved right to sue for damages but not right to terminate agreement). To hold that GSK had sacrificed all rights and not just to terminate or pursue liquidated damages would render the notification requirement meaningless. As set out above, GSK alleges it notified Hospira of the earlier breach. Accordingly, GSK has properly pled breach of contract.

*Quasi-Contract Claims*

Lastly, Hospira argues that the absence of dispute over whether a contract existed with respect to the TIV makes impossible any claim for quasi-contract relief. "Quasi-contractual relief is available when one party has benefitted from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such benefit." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) (quoting *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (Ill. App. Ct. 1994)). However, there can be no quasi-contract relief when an express contract exists

between the parties. *Slameck v. Empire Kosher Poultry, Inc.*, 290 F. Supp. 2d 934, 938 (7th Cir. 2003). Therefore, a party may plead breach of contract or, if it is determined that no contract exists, plead for quasi-contractual relief in the alternative. *Cromeens*, 349 F.3d at 397.

Hospira contends that GSK is precluded from pursuing quasi-contract claims because there is "no dispute" as to the existence of a contract between the parties. (Def. Mot. at 15.) However, GSK alleges a substantial dispute: that the contract allowed GSK to change the type of vaccine produced from TIV to QIV, which Hospira denies. Therefore, the Motion to Dismiss with respect to Counts II and III is denied.

## CONCLUSION

For the foregoing reasons, Hospira's Motion to Dismiss [53] is denied.

Date: 3/31/14

JOHN W. DARRAH
United States District Court Judge